STATE OF CONNECTICUT *v.* ALBERTO BRUNO
(SC 18251)
(SC 18252)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 19—officially released August 18, 2009

*Richard C. Marquette*, special public defender, for the appellant-appellee (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Richard L. Palombo, Jr.*, assistant state's attorney, for the appellee-appellant (state).

*Opinion*

PALMER, J. The defendant, Alberto Bruno, was convicted,[1] after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent, in violation of General Statutes § 21a-278 (b),[2] sale of a narcotic substance by a person who

---

[1] The narcotics and conspiracy charges of which the defendant was convicted were set forth in the first part of a two part information.

[2] General Statutes § 21a-278 provides in relevant part: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years or more than twenty-five years. The execution of the mandatory minimum sentence imposed by

is not drug-dependent, in violation of § 21a-278 (b), possession of a narcotic substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b),[3] and conspiracy to sell a narcotic substance by a person who is not drug-dependent, in violation of General Statutes §§ 21a-278 (b) and 53a-48.[4] Thereafter, following a trial to the court on part B of the two part information, in which the state charged the defendant with being a "[p]ersistent [d]rug [o]ffender" in violation of § 21a-278, the court found

the provisions of this subsection shall not be suspended, except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired, but not so impaired as to constitute a defense to prosecution."

Although § 21a-278 (b) was the subject of technical amendments in 2007; see Public Acts 2007, No. 07-217, § 97; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision.

[3] General Statutes § 21a-278a provides in relevant part: "(b) Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . ."

[4] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

We note that, although the information specifically charged the defendant with conspiracy to violate the state dependency-producing drug laws, of which § 21a-278 (b) is a part, both the state and the defendant have treated this charge as alleging that the defendant had conspired with others to sell a narcotic substance in violation of §§ 21a-278 (b) and 53a-48. Thus, we refer to this charge as conspiracy to sell a narcotic substance.

that the state had failed to meet its burden of proving that the defendant was guilty of that charge. Specifically, the court found, sua sponte, that the state improperly had charged the defendant with being a persistent felony offender under General Statutes § 53a-40 rather than charging him with being a subsequent drug offender under § 21a-278 (b), and that § 53a-40 does not apply to drug offenses. After the trial court rendered judgment in accordance with the jury verdict on the first part of the information, the defendant appealed[5] on the ground that the evidence was insufficient to support his conviction. The state appealed[6] from that part of the judgment dismissing part B of the information, claiming that the trial court improperly had concluded that the state had charged the defendant under § 53a-40 and not under § 21a-278 (b). With respect to the defendant's appeal, we reject his claim of evidentiary insufficiency and, therefore, affirm the judgment with respect to the offenses of which the defendant was convicted. With respect to the state's appeal, we conclude that the trial court improperly determined that part B of the information charged the defendant under § 53a-40 rather than under § 21a-278. Accordingly, we reverse the judgment pertaining to part B of the information and remand the case for a new trial on that part of the information.

The jury reasonably could have found the following facts. On the morning of April 12, 2005, the tactical narcotics team of the Bridgeport police department set up a surveillance operation in the parking area of an apartment building located at 25 Sanford Place in

[5] The defendant appealed to the Appellate Court from the trial court's judgment, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] After obtaining the trial court's permission to appeal pursuant to General Statutes § 54-96, the state appealed to the Appellate Court from the trial court's judgment, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Bridgeport. This location is approximately 760 feet from Kolbe Cathedral High School. At about 11:30 a.m., Officer Gregory Iamartino, a member of the surveillance team, observed the defendant moving furniture out of the building with Jose Albino. He also observed Duane Merritt, an acquaintance of the defendant, arrive in the area. As the defendant and Albino emerged from the apartment building, another unidentified male arrived and spoke first with Merritt and then with the defendant. The unidentified male handed cash to the defendant, who took a set of keys that had been hanging from his neck, opened the trunk of a Ford Taurus, removed several blue "folds"[7] containing heroin and gave three of them to Albino. Albino gave two of the folds to the unidentified male and put one in his pocket. At that point, Pedro Gonzalez arrived and, shortly thereafter, left the area with Merritt.

William Simpson, an undercover officer with the Bridgeport police department, had been directed to purchase drugs as part of the surveillance operation. During the operation, he wore a listening device. About five minutes after the sale of the heroin to the unidentified male, Simpson arrived at the parking lot. No one was in the parking lot at the time, so Simpson entered the apartment building. Shortly thereafter, Simpson emerged from the building with the defendant and asked the defendant to sell him "two baggies" of heroin. The defendant responded that he "didn't have any" heroin and asked Simpson to leave.

At that point, Merritt returned to the parking lot. The defendant told Merritt that Simpson wanted to buy drugs but that he thought that Simpson was a police officer. The defendant asked Merritt to "check the guy

---

[7] At trial, Iamartino testified that the heroin was contained in "blue rectangle fold[s]." He described a fold as "an opaque bag" that was approximately one-half inch wide by one inch long.

out," and Merritt agreed. The defendant then directed Simpson to go into the apartment building, which he did. At that point, the defendant went to the Ford Taurus, opened the trunk and removed two blue folds containing heroin. The defendant then gave them to Merritt, who wrapped them in a piece of aluminum foil that he had found on the ground. Merritt then entered the apartment building to talk with Simpson. Believing that Simpson might be wearing a listening device, Merritt patted down Simpson's chest. Simpson resisted, but Merritt was able to discover the listening device. Merritt then told Simpson that he was a "snitch" and made a cut throat gesture to Albino and Gonzalez.[8] Fearing for his life, Simpson pushed Merritt back through the door and into the parking lot. Meanwhile, Douglas Stolze, a lieutenant with the Bridgeport police department who had been monitoring Simpson's listening device, ordered other police officers who were participating in the operation to go to the apartment building. When Merritt saw the police officers, he threw away the package containing the heroin. Iamartino observed Merritt's action and retrieved the package. After officers detained the defendant, Iamartino took the defendant's keys, opened the trunk of the Taurus and found a black boot in which there were a number of small bags containing what appeared to be narcotics.

Rafal Mielguj, an analyst with the state toxicological laboratory, testified that the boot contained thirty-one small ziplock bags and glassine bags, that the substance in the ziplock bags had tested positive for crack cocaine and that the substance in the glassine bags had tested positive for heroin. Tests also had shown that the substance in the package thrown by Merritt was heroin.

The defendant was arrested and charged in part A of the information with possession of a narcotic substance

---

[8] Merritt testified that the cut throat gesture was intended to convey that he was not going to go through with the sale.

with intent to sell by a person who is not drug-dependent, sale of a narcotic substance by a person who is not drug-dependent,[9] possession of a narcotic substance with intent to sell within 1500 feet of a school, and conspiracy to sell a narcotic substance by a person who is not drug-dependent. In part B of the information, the state charged the defendant with being a "[p]ersistent [d]rug [o]ffender" under § 21a-278.[10] After a jury trial on part A of the information, the jury found the defendant guilty on all counts. Immediately thereafter, the defendant elected to have a court trial on part B of the information. At that time, the assistant state's attorney (prosecutor) stated that the state was "prepared to go forward on the part B information raising [the defendant's] exposure from the minimum five [years] to the minimum ten [years] on the [§ 21a-278 (b)] counts." The prosecutor presented evidence at the trial that the defendant previously had been convicted of violating § 21a-278 (b). During closing argument, the prosecutor stated that, on the basis of "the conviction [in the present case] and the conviction from the past, the defendant would be considered a second offender . . . under [§] 21a-278 (b) . . . ." At the conclusion of the trial on part B of the information, the court stated that it would defer its ruling until sentencing.

At the sentencing hearing, the trial court indicated that it had concluded that the "persistent offender statute of title 53a of the General Statutes" did not apply

---

[9] The state charged the defendant with selling narcotics to Simpson.

[10] In part B of the information, the state charged that, "at the [c]ity of Bridgeport, in the Superior Court for the [j]udicial [d]istrict of Fairfield . . . on [October 10, 1989], the said [defendant] was convicted of the crime of VIOLATION OF THE STATE DEPENDENCY PRODUCING DRUG LAW.

"WHEREFORE, the [s]tate's [a]ttorney charges that the said [defendant] is a [p]ersistent [d]rug [o]ffender under the provision[s] of [General Statutes §§] 21a-278 and 21a-277 . . . ."

to convictions under § 21a-278.[11] The trial court reached this conclusion on its own initiative, without the filing of any motions or briefs, or any other input, by the parties. Accordingly, the trial court stated that the defendant was "not guilty" of the charge in part B of the information. These appeals followed.

## I

We first address the defendant's appeal. The defendant claims that there was insufficient evidence to support his conviction of the narcotics and conspiracy charges in part A of the information. Specifically, the defendant claims that there was insufficient evidence for the jury to find beyond a reasonable doubt that he possessed narcotics with intent to sell or that he actually engaged in the sale of narcotics. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require

---

[11] The trial court stated that, "[b]ased [on] the evidence presented by the state, based [on] the information as it's written, based [on] statutory and case law interpretation, and legislative history . . . of . . . title 21a, further based on a lacking in the word or meaning of 'persistent' in our statute, and in the [specific] persistent offender statute of title 53a of the General Statutes, the court questions whether the persistent offender [statute] appl[ies] to prosecution under . . . [§] 21a-278, which contain[s] [its] own sentencing provisions.

"The court finds [that] they do not apply, and the court finds the defendant not guilty of being a persistent drug offender as set forth in [part B of] the information . . . ."

acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *John F.M.*, 285 Conn. 528, 544 n.15, 940 A.2d 755 (2008).

"To prove its case [of a violation of § 21a-278 (b)], the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic and (3) the defendant intended to sell it." (Internal quotation marks omitted.) *State* v. *Gooden*, 89 Conn. App. 307, 319, 873 A.2d 243, cert. denied, 275 Conn. 918, 919, 883 A.2d 1249 (2005). "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . [Although] mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder

of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149–50, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

General Statutes § 21a-240 (50) defines "sale" as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." General Statutes § 21a-240 (11) defines "delivery" as "the actual, constructive or attempted transfer from one person to another of a controlled substance . . . ."

The defendant contends that, because he did not have any narcotics in his "immediate possession" at the time of his arrest, the evidence was insufficient to establish that he possessed narcotics with intent to sell them. He further contends that there was insufficient evidence to establish beyond a reasonable doubt that he sold the narcotics because, when Simpson approached him to discuss a potential purchase, he stated that he did not have any drugs, and the sale actually occurred between Merritt and Simpson.

We reject the defendant's claim. The state presented evidence that the defendant possessed the key to the trunk of the Ford Taurus, that he used the key twice to gain access to the trunk of that vehicle, that he did so in response to requests to purchase narcotics and that he personally handled the narcotics. In light of this evidence, the jury reasonably could have found that the defendant had dominion and control over the narcotics contained in the boot and that he had knowledge of their character.

The state also presented evidence that the boot that was seized from the trunk of the Ford Taurus contained thirty-one small bags that contained heroin and cocaine. On the basis of this evidence, together with the evidence that the defendant responded to two requests to purchase narcotics by removing drugs from the trunk, the jury reasonably could have concluded beyond a reasonable doubt that the defendant possessed the narcotics contained in the boot with the intent to sell them in violation of § 21a-278 (b). Cf. *State* v. *Bowens*, 24 Conn. App. 642, 649, 591 A.2d 433 ("the large number of packets in the defendant's possession is the fact from which the inference of possession with intent to sell can be drawn"), cert. denied, 220 Conn. 906, 593 A.2d 971 (1991).

Furthermore, the state adduced evidence that, after Simpson had asked the defendant if he could purchase drugs from him, the defendant asked Merritt to "check . . . out" Simpson. Simpson then went into the apartment building, and the defendant transferred two packets of heroin to Merritt. On the basis of this evidence, the jury reasonably could have found beyond a reasonable doubt that the defendant had violated § 21a-278 (b) by delivering the heroin to Merritt with the expectation that Merritt would deliver it to Simpson in exchange for a payment of money. The defendant does not dispute that this activity took place within 1500 feet of a school, in violation of § 21a-278a (b).

Finally, the evidence was sufficient to support a jury finding that the defendant and Merritt had conspired to sell narcotics. "To establish the crime of conspiracy under § 53a-48, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy . . . . The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . The existence of a formal

agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act." (Internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 461–62, 886 A.2d 777 (2005). "[I]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." (Citation omitted; internal quotation marks omitted.) Id., 462. The defendant's delivery of the heroin to Merritt, and Merritt's attempt to determine, at the defendant's request, whether Simpson was a police officer, constituted evidence sufficient to establish that the defendant and Merritt had together conspired to sell narcotics. Accordingly, we reject the defendant's claim of evidentiary insufficiency.

## II

We next address the state's appeal. The state claims that the trial court improperly dismissed part B of the information, in which the state charged the defendant with being a subsequent drug offender, on the ground that § 53a-40 does not apply to convictions under § 21a-278 (b). The state contends that it did not charge the defendant under § 53a-40 but, rather, under the subsequent offender provision of § 21a-278 (b). The defendant does not directly address the merits of the state's contention but asserts that the state's appeal violates the double jeopardy clause of the fifth amendment to the United States constitution.[12] We conclude that the

---

[12] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

state's appeal does not violate double jeopardy principles and agree with the state that the trial court improperly dismissed part B of the information.

"We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. . . . The [c]lause operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 294, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

This court also has recognized, however, that double jeopardy principles do not bar an appeal by the state from a judgment that "was based on legal grounds unrelated to a determination of the sufficiency of the evidence regarding the defendant's factual innocence or guilt." *State* v. *Kruelski*, 250 Conn. 1, 8, 737 A.2d 377 (1999), cert. denied, 528 U.S. 1168, 120 S. Ct. 1190, 145 L. Ed. 2d 1095 (2000). In *Kruelski*, the defendant, Edward J. Kruelski, Jr., moved for a judgment of acquittal, after the close of evidence, on the ground that the prosecution was barred by the applicable statute of limitations. Id., 4. The trial court granted the motion, and the state appealed to the Appellate Court. Id. The Appellate Court reversed the judgment of the trial court and remanded the case for further proceedings. Id. Following the remand, Kruelski filed a motion to dismiss the case on the ground that further proceedings were barred by the double jeopardy clause. Id. The trial court

denied the motion, and Kruelski appealed to the Appellate Court, which affirmed. Id. The defendant then appealed to this court. Id., 5.

On appeal, we observed that the United States Supreme Court has held that the double jeopardy clause does not bar a government appeal when "the defendant elected to seek termination of the trial on grounds unrelated to guilt or innocence. [Such a case] is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the [g]overnment has failed to make out a case against him, but *because of a legal claim that the [g]overnment's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.*" (Emphasis in original; internal quotation marks omitted.) Id., 6, quoting *United States* v. *Scott*, 437 U.S. 82, 96, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978).

Thus, "[a]n appeal is not barred simply because a ruling in favor of a defendant is based [on] facts outside the face of the indictment . . . or because it is granted on the ground . . . that the defendant simply cannot be convicted of the offense charged . . . . Rather, a defendant is acquitted only when the ruling of the judge, whatever its label, actually represents a resolution . . . of some or all of the *factual elements of the offense charged*. . . . [When] the court, before the jury returns a verdict, enters a judgment of acquittal . . . [retrial] will be barred only when it is plain that the [trial court] . . . evaluated the [g]overnment's evidence and determined that it was legally insufficient to sustain a conviction." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Kruelski*, supra, 250 Conn. 6–7.

We conclude that these principles also apply in the present case. The trial court's ruling on part B of the information was based not on an evaluation of the state's evidence and a determination that it was insufficient to support a finding that the defendant previously had violated § 21a-278 (b) but on the court's legal determination "that the defendant simply cannot be convicted of the offense charged . . . ." (Citation omitted; internal quotation marks omitted.) Id., 6. Thus, despite the trial court's statement that the defendant was "not guilty," the court's ruling was the functional equivalent of a midtrial dismissal of part B of the information and did not constitute a determination that, on the facts adduced at trial, the state had failed to prove its case. In other words, despite the language that the trial court used in announcing its decision, that decision represented a legal ruling tantamount to a dismissal rather than a verdict of not guilty. See, e.g., id. ("[a] trial judge's characterization of his own action cannot control the classification of the action" [internal quotation marks omitted]); cf. Practice Book § 41-8 (2) (defects in information, including failure to charge offense, are raised in motion to dismiss information). We conclude, therefore, that retrial of the defendant on part B of the information is not barred by the double jeopardy clause.[13]

---

[13] The defendant claims that the present case is distinguishable from *Kruelski* and *Scott* because "[t]he decision in *Scott* only established an exception when a defendant successfully, and on his own motion, is able to achieve dismissal on purely legal grounds which are unrelated to the factual issues in the case." We have concluded, however, that the trial court's ruling on part B of the information in the present case was based on purely legal grounds. To the extent that the defendant asserts that this case is distinguishable from *Kruelski* and *Scott* because he did not obtain the dismissal *on his own motion*, we note that there is conflicting authority on the question of whether retrial is barred when the trial court has entered a midtrial dismissal sua sponte. Compare *United States* v. *Dahlstrum*, 655 F.2d 971, 975 (9th Cir. 1981) (retrial is barred when trial court, not defendant, "was the instigator and the primary mover of the events that led to the dismissal of the indictment"), cert. denied, 455 U.S. 928, 102 S. Ct. 1293, 71 L. Ed. 2d 472 (1982), with *State* v. *Calhoun*, 18 Ohio St. 3d 373, 377, 481 N.E.2d 624 (when trial court, on its own initiative, erroneously "rules midtrial that the

We next turn to the merits of the state's claim that the trial court improperly dismissed part B of the information. The state contends that § 21a-278 (b) plainly and unambiguously provides that, if the defendant previously has violated that statute, he is subject to an enhanced penalty. The defendant does not contest this claim, which reasonably cannot be disputed. It is clear, however, that the trial court concluded that the state had not charged the defendant under the subsequent offense provision of § 21a-278 (b) in part B of the information. Instead, the court apparently assumed that, because the information charged the defendant with being a "[p]ersistent [d]rug [o]ffender," it had charged the defendant with being a persistent felony offender under § 53a-40. Neither the state's brief nor the defendant's brief directly addresses the question of whether this interpretation of part B of the information was reasonable. Nevertheless, because this is a pure question of law, and because the record is adequate for review, we may consider this question. We conclude that the trial court's conclusion was not reasonable.

This court previously has not had occasion to address the precise situation presented by this case. We have considered, however, the related question of what standard applies when a defendant has claimed that the information did not provide sufficient notice of the charges against him. We have held that, "[w]hen an

statute [on] which an indictment is based is unconstitutionally vague and thereupon dismisses the indictment, double jeopardy does not bar retrial"), cert. denied, 474 U.S. 983, 106 S. Ct. 391, 88 L. Ed. 2d 343 (1985); see also *United States* v. *Jorn*, 400 U.S. 470, 484, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971) (retrial is barred after trial court sua sponte has declared mistrial in absence of manifest necessity, but retrial is not barred after verdict is reversed on defendant's appeal because defendant has not been deprived of his option to obtain verdict from original jury). Because the law on this issue is unsettled, and the defendant's claim is inadequately briefed, we decline to review it. See, e.g., *In re Melody L.*, 290 Conn. 131, 154, 962 A.2d 81 (2009).

information inform[s] the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and [is] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, [the information has] performed [its] constitutional duty. . . . As long as an information provides the statutory name of the offense . . . identifie[s] the place of the offense, the names of the victims, and the general nature of the acts . . . the allegations . . . [are] sufficient." (Citation omitted; internal quotation marks omitted.) *State* v. *Solek*, 242 Conn. 409, 423–24, 699 A.2d 931 (1997). "The construction of a pleading is a question of law, over which we exercise plenary review." *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003).

In the present case, part B of the information alleged that the defendant had been convicted in 1989 of the crime of violating the state's dependency-producing drug law. It further alleged that the defendant was, therefore, a "[p]ersistent [d]rug [o]ffender" under § 21a-278. The trial court apparently concluded that, because, unlike § 53a-40, § 21a-278 (b) does not use the word "persistent" but, instead, uses the word "subsequent," the state could not have been charging the defendant as a subsequent offender under § 21a-278 (b). Part B of the information expressly refers to § 21a-278, however, and not to § 53a-40. Moreover, the prosecutor indicated at trial that he was seeking to increase the defendant's exposure from five years imprisonment to ten years imprisonment, which is the sentence enhancement for subsequent offenders under § 21a-278 (b),[14] and he

---

[14] In contrast, General Statutes § 53a-40 (m) provides in relevant part that, when a defendant is found to be a persistent felony offender, the trial court "may impose the sentence of imprisonment authorized by . . . section [53a-35a] for the next more serious degree of felony; provided the sentence imposed may not be less than three years, and provided further three years of the sentence so imposed may not be suspended or reduced by the court."

stated during closing argument that the court should find the defendant to be "a second offender . . . under [§] 21a-278 (b) . . . ." Defense counsel did not object to these remarks, and the defendant never has claimed that the information did not sufficiently apprise him that he was being charged as a subsequent offender under § 21a-278 (b). Nor does the defendant claim that his defense against the charge contained in part B of the information was prejudiced in any way by the state's use of the word "persistent" therein. It is clear, therefore, that the defendant understood that the state was charging him under the subsequent offender provision of § 21a-278 (b) rather than the persistent felony offender provisions of § 53a-40. Indeed, the Appellate Court previously has used the phrase "persistent drug offender" to describe a defendant who has been convicted of committing subsequent offenses under § 21a-278 (b) and General Statutes § 21a-277 (b); see *State* v. *Jones*, 113 Conn. App. 250, 252 n.1, 966 A.2d 277, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009); *Knight* v. *Commissioner of Correction*, 68 Conn. App. 617, 618, 793 A.2d 1092 (2002); *State* v. *Knight*, 50 Conn. App. 109, 110, 717 A.2d 274 (1998); a fact that strongly supports our conclusion that it was not inherently misleading or otherwise unreasonable for the state to characterize the offense in this way in part B of the information.

In sum, although it might have been preferable for the state to have used the word "subsequent" instead of "persistent," we cannot conclude that, under these circumstances, this deviation from the wording of § 21a-278 (b) was a reasonable basis for the trial court to conclude that the state had charged the defendant with being a persistent felony offender under § 53a-40 rather than a subsequent offender under § 21a-278 (b).[15] We

[15] Indeed, if the trial court believed that the state had intended to charge the defendant under § 53a-40 in part B of the information, the proper basis for dismissing the information would have been that the information did

conclude, therefore, that the trial court improperly dismissed part B of the information.[16]

The state contends that, if we rule in its favor on its appeal, a second evidentiary hearing will not be necessary because the trial court on remand simply may make a factual determination as to whether the evidence adduced at the trial on part B of the information was sufficient to find that the defendant is a subsequent drug offender under § 21a-278 (b). Thus, the state appears to argue that, on remand, the trial court may rely on the transcripts and exhibits presented at the initial trial in determining whether the defendant is a subsequent drug offender. We do not agree. The defendant is entitled to a trial on part B of the information before the fact finder that will render the verdict. See *State* v. *Kruelski,* supra, 250 Conn. 4 (when case was dismissed after close of evidence and dismissal was reversed by Appellate Court, that court remanded case for retrial).

The judgment with respect to the first part of the information is affirmed; the judgment with respect to part B of the information is reversed and the case is remanded for a new trial on that part of the information.

In this opinion the other justices concurred.

---

not cite that statute and, therefore, did not sufficiently apprise the defendant of the basis for the charge.

[16] The state's failure to bring the trial court's error to the attention of that court at the sentencing hearing does not affect our conclusion. As we have explained, the state did not mislead the trial court, and the trial court gave no notice to the parties that it intended to treat part B of the information as if it had charged the defendant with being a persistent felony offender under title 53a of the General Statutes. Indeed, it is not entirely clear from the transcript of the proceeding whether the trial court was aware of the subsequent offender provision of § 21a-278 (b) and, if so, why it ignored that provision. Thus, the state reasonably could have believed that the trial court had concluded that § 21a-278 (b) did not provide for an enhanced penalty for subsequent offenses. Moreover, we are aware of no authority for the proposition that a party is required to seek reconsideration or correction of a final judgment before it may appeal from the judgment.