******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TERRY P. HERRING
(AC 34292)

DiPentima, C. J., and Alvord and Harper, Js.

*Argued January 15—officially released June 24, 2014*

(Appeal from Superior Court, judicial district of New Britain, Kahn, J.)

*Mary Beattie Schairer*, assigned counsel, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Christian Watson*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Terry P. Herring, appeals from a judgment of conviction, rendered after a jury trial, of conspiracy to distribute one kilogram or more of marijuana in violation of General Statutes §§ 52a-48 and 21a-278 (b), and possession of one kilogram or more of marijuana with the intent to sell as an accessory in violation of General Statutes §§ 53a-8 and 21a-278 (b).[1] The defendant claims that (1) both convictions were based on insufficient evidence; (2) the court improperly instructed the jury on the state of mind required to convict him on both charges; and (3) his right to due process was violated as a result of prosecutorial impropriety. We disagree, and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Agent Eric Ebrus of the United States Drug Enforcement Agency received information that a large shipment of marijuana was scheduled to be delivered to 21 Austin Street in New Britain on February 9, 2010. Federal agents intercepted the package in Springfield, Massachusetts. The bill of lading indicated that the package weighed approximately 260 pounds. The package's documentation stated that it contained car parts and was being shipped to "Jim Bernard Garage." After obtaining a search warrant, the agents drilled a hole in the bottom of the package to determine whether the package contained any illegal substances. On the basis of Ebrus' knowledge and experience, he concluded that the package contained marijuana. The agents then planned a controlled delivery of the package, during which they would monitor it until someone accepted delivery.

Prior to intercepting the package in Springfield, Ebrus contacted Officer Frank Bellizzi of the New Britain Police Department on February 3, 2010. He informed Bellizzi that a shipment of marijuana was scheduled to be delivered to 21 Austin Street, and subsequently the two law enforcement agencies collaborated in the investigation. The investigation revealed that the defendant owned the property in question. Bellizzi began conducting periodic surveillance of the subject property. He observed that the area was residential, and that there was no evidence to indicate the presence of any commercial businesses. On February 8, 2010, however, Bellizzi discovered that a sign reading "Jim's Garage" had been placed on the front lawn of the subject property.

At approximately nine in the morning on the day that the package was scheduled to be delivered, February 9, 2010, officers from the New Britain Police Department began conducting surveillance of the subject property. The officers observed the defendant engage in a series of countersurveillance activities. Various officers testified at trial that countersurveillance is conduct intended

to detect the presence of law enforcement so that one coconspirator may alert others, thereby evading detection by law enforcement. Specifically, the officers testified that, from 9:30 a.m. to 11:30 a.m., the defendant remained in a parked car observing his property from several houses away. The defendant admitted that periodically he would drive around the neighborhood looking for the presence of law enforcement and then resume conducting surveillance of his property. At one point, when the defendant was patrolling the area, he observed Bellizzi conversing with an officer in a marked police vehicle. The defendant alerted Christopher Watson, a coconspirator, that police were in the area.[2]

In order to confirm that the defendant was engaged in countersurveillance, at approximately 11:45 a.m., undercover officers intentionally ran over the "Jim's Garage" sign on the defendant's lawn in an unmarked police vehicle. In response, the defendant drove his car from his surveillance position to his property and exited the vehicle. The officers claimed that they were lost. The defendant, visibly upset about the incident, stated that the sign was his, and then gave the undercover officers directions. Afterward, the defendant replaced the sign before driving around the neighborhood and taking up his previous position.

While the New Britain police officers were conducting surveillance of the defendant and his property, Ebrus was in Springfield monitoring the package. He observed the package being loaded onto the delivery truck and then followed the truck until it arrived at the defendant's property at approximately 1:45 p.m. Watson arrived at the scene prior to the delivery. When the delivery truck arrived, the driver exited the vehicle and was joined by the defendant and Watson at the rear of the truck. The driver removed the package, and all three individuals used a dolly to move the package up the defendant's driveway and into his garage. The defendant then closed his garage door, securing the package within. After the driver left, the officers observed the defendant and Watson walking back up the driveway and into the street. At this time, officers converged on both individuals and placed them under arrest.

The officers found a remote garage door opener upon searching the defendant's person incident to the arrest. Bellizzi pressed the button on the remote, and the defendant's garage door opened, exposing the package in question. The defendant then consented to a search of his home and the garage. When the defendant and Bellizzi approached the package, the defendant stated: "I knew this wasn't going to be good." Bellizzi noted that, although a sign had been placed on the defendant's lawn stating, "Jim's Garage," there was no evidence of any cars being repaired on the property. The defendant was transported to the New Britain Police Department for questioning. The officers confiscated the package

and forensic analysis later determined that it contained 102 pounds of marijuana.[3]

At the police department, the officers obtained a signed, written statement from the defendant regarding the events in question. The statement indicated that Watson put the "Jim's Garage" sign in front of the defendant's house. The defendant stated that Watson had told him that he would be paid $1400 to accept delivery of an "engine crate." When the defendant asked Watson what was in the package, Watson informed him that it contained "something that shouldn't be in it." The defendant, however, still agreed to accept the package. He also admitted in his written statement that he was conducting countersurveillance on February 9, 2010, had helped unload the package, and had stored the package in his garage.

At trial, the state argued that the circumstantial evidence demonstrated that the defendant knew that the package contained marijuana. Specifically, the state argued that the reference to "Jim Bernard Garage" on the package, the "Jim's Garage" sign on the defendant's property, his reaction when the sign was damaged, his countersurveillance, the fact that he was paid $1400 to accept delivery of the package, and his written statement to the police amounted to sufficient circumstantial evidence to infer that the defendant knew that the package contained one kilogram or more of marijuana. The defendant was convicted of conspiracy to distribute one kilogram or more of marijuana in violation of §§ 53a-48 and 21a-278 (b) (conspiracy count), and possession of one kilogram or more of marijuana with intent to sell as an accessory in violation of §§ 53a-8 and 21a-278 (b) (accessory count).

On appeal, the defendant claims that (1) the jury improperly convicted him on both the conspiracy count and the accessory count because there was insufficient evidence that he knew that the contents of the package was marijuana, or, moreover, that the package contained one kilogram or more of marijuana; (2) the court improperly instructed the jury with respect to the mental state required to find him guilty of both counts; and (3) the prosecutor's comments during closing arguments constituted prosecutorial impropriety and deprived the defendant of his right to due process. We disagree. Additional facts will be set forth as necessary.

I

The defendant raises one claim that there was insufficient evidence to convict him of the conspiracy count, and a separate insufficiency claim with respect to the accessory count. In each claim, he argues that the state did not prove beyond a reasonable doubt that he knew that there was marijuana in the package that was delivered to his house, and, even if he knew that marijuana was in the package, he did not know that one kilogram

or more of marijuana was present.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 147–48, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . ." (Internal quotation marks omitted.) Id., 147. "[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 148. "[W]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005).

A

The defendant first claims that there was insufficient evidence adduced at trial that he knew that the package contained marijuana. We first explain why the defendant's knowledge that the package specifically contained marijuana—as opposed to any other contraband—was an essential element of both the conspiracy count and the accessory count. A conspiracy conviction requires proof that the defendant had the specific intent to bring about each element of the underlying crime. *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005). One element of the underlying crime in the conspiracy count, § 21a-278 (b), is that the substance distributed was marijuana. Furthermore, to be

convicted as an accessory, the defendant must possess the same intent as the principal. See *State* v. *Gonzalez*, 300 Conn. 490, 507, 15 A.3d 1049 (2011). The underlying crime in the accessory count, possession of a controlled substance, requires that the state "establish that the defendant knew the character of the substance . . . ." (Internal quotation marks omitted.) *State* v. *Bruno*, 293 Conn. 127, 136, 975 A.2d 1253 (2009). Accordingly, proof that the defendant knew that the package contained marijuana was an essential element of both the conspiracy count and the accessory count.

Under similar circumstances, our Supreme Court held that there was sufficient evidence to uphold a conviction for conspiring to possess one kilogram or more of marijuana with intent to sell. *State* v. *Martin*, supra, 285 Conn. 156. In *Martin*, the issue on appeal was "whether the state introduced sufficient circumstantial evidence to support a permissive inference by the jury that the defendant had knowledge that a package contained illegal narcotics, considering the defendant's actions before, during and after a controlled delivery of the package." Id. 136–37. The evidence at trial showed that the defendant accepted receipt of a package that had a fictitious addressee, he engaged in countersurveillance,[4] he actively participated in transporting the package via car, he assisted carrying the package into a residence, he possessed enough cash to purchase one pound of marijuana, and he was found in possession of a fraudulent driver's license.[5] Id. 138, 142, 150–55. The court concluded that the circumstantial evidence was sufficient to convict the defendant of conspiracy to possess one kilogram or more of marijuana with the intent to sell. Id., 156–57.

In *Martin*, the court also addressed the potential risk of convicting innocent bystanders of conspiracy to possess a controlled substance on the basis of circumstantial evidence alone. Id., 157. The court reasoned that any concern that the defendant was merely an innocent bystander was overcome by "the substantive impact of the circumstantial evidence . . . [that allowed] an inference of the defendant's knowledge of the marijuana in the package." Id. "[Although] mere acceptance of a package containing narcotics is an insufficient basis for an inference of knowledge of its contents . . . [a] defendant's active participation in the conspiracy to possess one kilogram or more of marijuana, with the intent to sell, [makes] him more than simply an innocent bystander." (Internal quotation marks omitted.) Id. We interpret *Martin* to stand for the proposition that, when viewing the evidence in a light most favorable to sustaining a guilty verdict, a jury reasonably may infer that the defendant knows a package contains a specific controlled substance when the defendant is in possession of the package and there is additional circumstantial evidence supporting the inference that the defendant has knowledge of its con-

tents, such as evidence that the defendant engaged in countersurveillance or otherwise actively prepared to accept the package. See id., 156–58; see also *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999) ("it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference" [internal quotation marks omitted]).

In the present case, there was sufficient circumstantial evidence presented at trial to permit a reasonable inference that the defendant knew that the package in question contained marijuana. The package was addressed to a fictitious business. The defendant posted a sign corresponding to the fictitious business on his property the day before the package was delivered. He unequivocally stated to police officers that the sign was his. The defendant engaged in countersurveillance, admitting in his written statement that he was "looking for cops before the package was delivered" and that he had alerted his coconspirator to the presence of law enforcement in the area. The defendant helped move the package into his garage. When he was arrested, the defendant stated to the police, "I knew this wasn't going to be good." The defendant admitted that he agreed to accept $1400 as compensation for accepting delivery of the package at his house. On the basis of this evidence, viewed in the light most favorable to upholding the verdict, the jury reasonably could have concluded that "[t]he defendant's active participation . . . made him more than simply an innocent bystander." (Internal quotation marks omitted.) *State* v. *Martin*, supra, 285 Conn. 157. Ultimately, "it [is] the jury's province to determine whether the defendant was an innocent bystander or an active participant in the criminal conspiracy . . . and we should not override that decision on the basis of the cold, printed record." (Internal quotation marks omitted.) Id., 156. We conclude that the substantive impact of the circumstantial evidence, taken as a whole, permits an inference of the defendant's knowledge of the marijuana in the package. See id., 157.

B

The defendant also argues, as part of his insufficiency claims, that there was insufficient evidence he knew that there was one kilogram or more of a controlled substance in the package. As a preliminary matter, we conclude that this claim is only relevant to the conspiracy count. As discussed previously, a conspiracy conviction requires the specific intent to bring about every element of the crime, which in this case includes the fact that the controlled substance weighed one kilogram or more. See General Statutes § 21a-278 (b); *State* v. *Padua*, supra, 273 Conn. 167. An individual's liability as an accessory, on the other hand, is commensurate with that of the principal and the state's burden of

proof does not change. See *State* v. *Gonzalez*, supra, 300 Conn. 507. This distinction between liability as a coconspirator and liability as an accessory is significant if one of the elements of the underlying crime does not require proof of specific intent. When that is the case, the state has a relatively lesser burden with respect to that element if it charges the defendant as an accessory because the state does not have the burden of proving specific intent.[6] The defendant's claim here that the evidence was insufficient to convict him as an accessory raises a question of statutory interpretation: whether the defendant's knowledge that he possessed one kilogram or more of marijuana is an element of § 21a-278 (b). See *State* v. *Denby*, 235 Conn. 477, 478, 481, 668 A.2d 682 (1995). Our standard of review therefore is plenary. Id., 481.

Section 21a-278 (b) prohibits any person from possessing with the intent to sell one kilogram or more of marijuana. The defendant's claim asks us to consider whether § 21a-278 (b) requires that the state prove that the defendant knew that he possessed one kilogram or more of marijuana. We can find no Connecticut appellate court decision directing that the state must prove that the defendant knew that he was in possession of what amounted to one kilogram or more of marijuana. Our precedent directs that, to convict a defendant of violating § 21a-278 (b), the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic, (3) the defendant intended to sell the substance, and (4) the defendant knew the character of the substance. *State* v. *Bruno*, supra, 293 Conn. 136; see also *State* v. *Martin*, supra, 285 Conn. 149. If the substance is marijuana, the state must prove that the defendant possessed one kilogram or more of marijuana. General Statutes § 21a-278 (b). There is no specific requirement in the plain language of the statute that the state must prove that the defendant knew that he possessed one kilogram or more of marijuana, and we will not infer such a requirement. See *State* v. *Denby*, supra, 235 Conn. 482–83. "The absence of any statutory requirement that the defendant knowingly [possessed one kilogram or more] demonstrates that the legislature did not intend to make knowledge an element of the crime. If the legislature had wanted to make knowledge as to [the amount of marijuana in question] an element of the offense, it would have done so by specifically stating [as much]." Id. Because the defendant's knowledge regarding the amount of marijuana is not an element of the crime, the state was not required to prove that the defendant knew that he possessed one kilogram or more of marijuana in order to convict him as an accessory. The defendant's claim that there was insufficient evidence with respect to his knowledge of the amount of marijuana contained in the package is, therefore, only relevant to the conspiracy count.

The jury reasonably could have inferred that, on the basis of the circumstantial evidence, the defendant knew that there was one kilogram or more of marijuana in the package for purposes of the conspiracy count. The bill of lading stated that the package weighed 260 pounds, whereas one kilogram is only about 2.2 pounds. There was testimony that the package weighed so much that the defendant, the delivery truck driver, and Watson collectively moved it from the truck to the garage with the aid of a hydraulic dolly. Furthermore, it took two officers to load the package into a police pickup truck for transfer to the police department. After a forensic analysis, it was determined that the package seized contained 102 pounds of marijuana. On the basis of all the evidence, the jury reasonably could have inferred that the defendant knew that the package contained one kilogram or more of marijuana. See *State* v. *Martin*, supra, 285 Conn. 158. We conclude that there was sufficient evidence to convict the defendant on both the conspiracy count and the accessory count.

## II

The defendant also claims that the court erred in its instructions relating to the state's burden of proving that the defendant knew that the package contained marijuana. He argues that the court's instructions indicated to the jury that it could find that he knew that the package contained marijuana on the basis of its subjective belief that a reasonable person would have known that the package contained marijuana. The defendant concedes that this claim is unpreserved, but, nevertheless, requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We conclude that, pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), the defendant has waived any challenge to the relevant jury instruction and, therefore, is not entitled to *Golding* review.

The following facts are necessary for the resolution of this claim. The court provided the defendant with proposed jury instructions on the second day of trial, October 25, 2011. Two days later, on October 27, 2011, the defendant stated that he had reviewed the jury charge and had some objections as well as some suggested additional instructions. The charge conference began later that day and concluded on October 28, 2011. The court ultimately instructed the jury that "[t]he state must prove beyond a reasonable doubt that the defendant knew that he was in possession of [marijuana]." The court then instructed that a person acts "knowingly" when he is aware that a fact or circumstance exists. The court subsequently instructed: "Ordinarily, knowledge can be established only through an inference from other proven facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable person of honest intention, in the situation of the defendant, would have concluded that he was in

possession of [marijuana]. The determinative question is whether the circumstances in the particular case form a basis for a sound inference as to the knowledge of the defendant in the transaction under inquiry." The defendant asserts that this instruction "lowered the state's burden of proof" and allowed the jury to convict him on the basis of its subjective belief as opposed to the defendant's objective knowledge that the package contained marijuana. We conclude that the defendant has waived this claim, and, therefore, we decline to review it.

"It is well established in Connecticut that unpreserved claims of improper jury instructions are reviewable under *Golding* unless they have been induced or implicitly waived." *State* v. *Kitchens*, supra, 299 Conn. 468. "The mechanism by which a right may be waived . . . varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be affected by action of counsel. . . . [including] the right of a defendant to proper jury instructions." (Citation omitted; internal quotation marks omitted.) Id., 467. "Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Internal quotation marks omitted.) Id., 469. "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. "[C]ounsel's discussion of unrelated parts of the jury charge at an on-the-record charge conference . . . demonstrate[s] that counsel was sufficiently familiar with the instructions to identify those portions of the instructions with which he disagreed. [T]o the extent that he selectively discussed certain portions of the instructions but not others, one may presume that he had knowledge of the portions that he did not discuss and found them to be proper, thus waiving the defendant's right to challenge them on direct appeal." Id., 499 n.31.

The defendant had a meaningful opportunity to review the proposed jury instruction at issue and affirmatively assented to that instruction. The defendant had two days to review the proposed jury instructions. He stated that he had reviewed the charge and took exception to some of the instructions. The court then proceeded to review the instructions with counsel page by page. The defendant took exception to the language in the paragraph preceding the instruction he now claims

was improper and the sentence immediately following the instruction. We conclude that, under these circumstances, the defendant had a meaningful opportunity to review the jury instruction in question, assented to that instruction, and thereby waived his right to challenge the instruction on appeal. See *State* v. *Webster*, 308 Conn. 43, 63, 60 A.3d 259 (2013) ("in every post-*Kitchens* case in which defense counsel was given the opportunity to review the proposed jury instructions overnight, we have concluded that defense counsel had received a meaningful opportunity to review the proposed instructions"); *State* v. *Kitchens*, supra, 299 Conn. 499 n.31 (objection to adjacent instructions indicative of assent to instruction in question).[7] As such, we decline to review this claim. *State* v. *Kitchens*, supra, 468.

### III

The defendant's final claim is that his right to due process was violated as a result of improper comments by the prosecutor during closing argument. He argues that the prosecutor "misled" the jury into believing that the defendant could have been convicted of the crimes charged if he knew that there was "something illegal" in the package, yet did not know that the illegal material was specifically marijuana. Furthermore, the defendant also claims that it was improper for the prosecutor to argue that the defendant could be convicted on the basis of his written statement alone. We conclude that the prosecutor's remarks were not improper.[8]

With respect to a claim of prosecutorial impropriety during closing arguments, the defendant has the burden of first proving that the prosecutor's remarks were improper. *State* v. *Otto*, 305 Conn. 51, 76, 43 A.3d 629 (2012). "[Our Supreme Court] previously has acknowledged: [P]rosecutorial [impropriety] of constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [A] prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Furthermore, prosecutors are not permitted to misstate the law . . . and suggestions that distort the government's burden of proof are likewise improper . . . because such statements are likely to improperly mislead the jury." (Citations omitted; internal quotation marks omitted.) Id., 76–77.

Throughout closing argument, the prosecutor repeatedly argued that, on the basis of the evidence, the jury should infer that the defendant knew that there was

"something illegal" in the package. These comments are well within the limits of legitimate argument, as the evidence reasonably led to the conclusion that the defendant knew that the package contained contraband. We disagree with the defendant that the prosecutor also argued that knowledge of some unspecific contraband was sufficient to find the defendant guilty.[9] We therefore conclude the prosecutor did not improperly mislead the jury in this respect.

The prosecutor also argued: "The defendant's own words [in his written statement to the police] are enough to convict the defendant . . . of conspiracy to possess marijuana with intention to sell and accessory to the same charge. . . . His own words damn—damn him in this case." This argument is "fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." *State* v. *Otto*, supra, 305 Conn 76. It establishes that: (1) the defendant agreed with Watson to accept delivery of a package at his residence in exchange for $1400; (2) the defendant knew that the package contained contraband; (3) the defendant prepared for the delivery of the package by placing a fictitious business sign in front of his house and by conducting countersurveillance; and (4) the defendant helped unload the package and place it in his garage. It was within the bounds of legitimate and zealous argument for the prosecutor to assert that, on the basis of these facts, the defendant knew that the package contained marijuana, and, therefore, he could be found guilty of the crimes charged. See *State* v. *Martin*, supra, 285 Conn. 158 (defendant's active participation in accepting package together with other circumstantial evidence sufficient to prove knowledge of package's contents).[10] We conclude that the prosecutor's remarks during closing argument did not constitute prosecutorial impropriety.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was charged with conspiracy to distribute one kilogram or more of a cannabis-type substance and possession of one kilogram or more of a cannabis-type substance with intent to sell as an accessory. Our General Statutes define marijuana as a cannabis-type substance. General Statutes § 21a-240 (7) and (29). In this opinion, we refer to the substance in question as marijuana.

[2] Watson pleaded guilty to one count of conspiracy to sell a controlled substance in violation of General Statutes § 21a-277 (b) and was sentenced to a total effective term of seven years incarceration, execution suspended after three years, followed by three years of probation.

[3] This amount is equivalent to forty-six and one-half kilograms.

[4] In *Martin*, the defendant's vehicle "drove slowly around the lot [where the delivery was to take place]. [The vehicle] then stopped, and the defendant, who was a passenger in the vehicle, got out of the car. The defendant was out of the vehicle for fewer than five minutes, during which time he walked around the lot, casually looking at the vehicles in the lot as he passed them. He then returned to the vehicle, and . . . left the lot. Shortly thereafter . . . the package was picked up." (Footnote omitted; internal quotation marks omitted.) *State* v. *Martin*, supra, 285 Conn. 141. After the package was picked up, the parties entered another parking lot before returning the way they came in an effort to determine whether they were being followed by law enforcement. Id., n.8.

[5] The defendant claims that in *Martin*, our Supreme Court also relied on the fact that the defendant had a criminal history and was facing deportation. Those facts, however, related to the defendant's credibility as a witness and were not directly considered as part of the determination that the defendant knew that there was marijuana in the package. See *State* v. *Martin*, supra, 285 Conn. 155. In the present case, the defendant did not testify, and, therefore, his credibility is not at issue on appeal. See id., 143 n.11.

[6] Justice Borden's concurrence in *State* v. *Pond*, 138 Conn. App. 228, 239, 50 A.3d 950, cert. granted, 307 Conn. 933, 56 A.3d 714 (2012), contains a thorough discussion regarding why more evidence is required to convict a defendant as a coconspirator as opposed to as an accessory or a principal. He explains that "if a defendant is charged either *as a principal or an accessory* to robbery in the second degree . . . the state *would not be required* to prove that he, or another participant, specifically intended to possess or display a deadly weapon or dangerous instrument. Yet, if the defendant is charged with *conspiring* to commit robbery in the second degree . . . the state *is required* to prove that he or another participant specifically intended to possess or display a deadly weapon or dangerous instrument.

"The anomaly in these lines of precedent is this: it means that, in charging the *inchoate*—or *incompleted*—crime of conspiracy to commit a particular offense, the state is required to prove *more*, by way of mens rea, than it is required to prove when it charges [the defendant as a principal or an accessory to] the *completed crime* itself. . . . It is simply anomalous that the state would be required to prove a greater mens rea for an *inchoate crime*—conspiracy—than for the *completed crime* itself." (Citations omitted; emphasis in original; footnote omitted.) Id., 246–47 (*Borden, J.*, concurring).

[7] The defendant also argues that this claim should be reviewed because the allegedly improper jury instruction amounts to plain error. We are not persuaded that an error exists that is so obvious that it amounts to manifest injustice or affects the fairness and integrity of and the public confidence in the judicial proceedings, and, therefore, we decline the defendant's invitation to reverse his conviction for plain error. See *State* v. *Maskiell*, 100 Conn. App. 507, 521, 918 A.2d 293, cert. denied, 282 Conn. 922, 925 A.2d 1104 (2007). Furthermore, we decline to review this claim pursuant to our supervisory powers, as the defendant has not demonstrated a compelling reason why the jury instruction under review implicates either the integrity of this particular trial or the perceived fairness of the judicial system as a whole. See *State* v. *Luster*, 279 Conn. 414, 425–26, 902 A.2d 636 (2006).

[8] The state concedes, and we agree, that the defendant's claim of prosecutorial impropriety, although unpreserved, is still reviewable without invoking *State* v. *Golding*, supra, 213 Conn. 233. "Once prosecutorial impropriety has been alleged . . . it is unnecessary for an appellate court to review the defendant's claim under *Golding*." (Citation omitted; footnote omitted.) *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978 (2007).

[9] We also note that the court instructed the jury: "What I tell you, not what the attorneys tell you is the law that you are to follow. If the law as I give it to you differs in any way from the claims of law made by counsel, dismiss from your minds what counsel has said to the extent it differs from what I tell you." The court's general instructions to the jury properly instructed it that arguments by counsel were not evidence. Such an instruction by the trial court adequately addressed any impropriety that might be found to have occurred, although none was present in this case. See *State* v. *Ampero*, 144 Conn. App. 706, 724, 72 A.3d 435, cert. denied, 310 Conn. 914, 76 A.3d 631 (2013).

[10] Although the defendant's statement to the police does not establish the weight of the package, which was an element of the conspiracy charge; see part I B of this opinion; we still conclude that, given the generous latitude we afford prosecutors during closing argument, the prosecutor's comments were within the limits of legitimate argument in light of the uncontested evidence that the package weighed over two hundred pounds.

[11] Because we conclude that the statements made by the prosecutor in the present case were not improper, we do not reach the question of whether any misconduct rose to the level of denying the defendant his right to a fair trial. See *State* v. *Otto*, supra, 76 n.19.