## STATE OF CONNECTICUT *v.* KAREEM HEDGE
### (SC 18161)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued December 2, 2008—officially released August 3, 2010

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Kareem Hedge, appeals from the judgment of conviction, rendered after jury trials, of unlawfully transporting cocaine and heroin with intent to sell by a person who is not drug dependent in violation of General Statutes § 21a-278 (b),[1] unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), possession of cocaine in violation of General Statutes § 21a-279 (a), and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1). The trial court rendered judgment in accordance with the jury verdicts and sentenced the defendant to a total effective sentence of thirteen years imprisonment. On appeal, the defendant claims that (1) his constitutional right to present a defense[2] with respect to the drug charges

---

[1] Although § 21a-278 (b) has been the subject of recent technical amendments, those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 21a-278 (b) throughout this opinion.

[2] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [and] to have compulsory process for obtaining witnesses in his favor . . . ."

"A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment . . . [which] are made applicable to state prosecutions through the due process clause of the fourteenth amendment. *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (right to confrontation); see *Washington* v.

was violated when the trial court precluded him from introducing evidence of third party culpability, (2) the evidence was insufficient to support his conviction of unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project, (3) his fifth amendment right against double jeopardy[3] was violated when the trial court permitted the state to try him for unlawfully transporting heroin with intent to sell because he previously had been acquitted of the same charge, and (4) the evidence was insufficient to support his conviction of failure to appear in the first degree. We agree with the defendant, first, that the trial court's exclusion of third party culpability evidence violated his right to present a defense with respect to the drug charges, second, that the evidence was insufficient to support his conviction of unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project and, third, that his conviction of unlawfully transporting heroin with intent to sell violated his right against double jeopardy. Accordingly, we conclude that his conviction on the drug charges must be reversed and that he is entitled to a judgment of acquittal on the charge of unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project and a new trial on the remaining drug charges. We affirm the trial court's judgment with respect to the defendant's conviction of failure to appear in the first degree.

---

*Texas*, 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (right to compulsory process)." (Citation omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 622–23 n.26, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

[3] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

The jury reasonably could have found the following facts. In the early morning hours of May 11, 2002, Officers Nick Grasso and Raymond Ryan of the Bridgeport police department were patrolling the area around Marina Village, a public housing project in the city of Bridgeport. At the time, they were assigned to the Mayor's Office of Special Targets (MOST) detail, which was charged with conducting "proactive police work." The area around Marina Village was known to the officers for its heavy drug trafficking and other crime. At approximately 1:30 a.m., Grasso and Ryan observed the defendant driving a tan Toyota Camry heading northbound on Columbia Street. The vehicle was owned by the defendant's girlfriend, Renita Lathrop. There were no other vehicles on the road when the officers observed the defendant. When the defendant came to the intersection of Columbia Street and Johnson Street, he turned right onto Johnson Street, which was the only direction he could turn at that intersection. The officers observed that the defendant had failed to use his turn signal and immediately pulled him over. Grasso approached the driver's side of the defendant's vehicle while Ryan approached the passenger's side. Both officers were carrying flashlights. Grasso asked the defendant for his driver's license, vehicle registration and proof of insurance. The defendant informed the officer that he did not have his license in his possession and proceeded to look in the glove compartment and the center console compartment for the other documents. While the defendant was searching for those documents, Grasso shined his flashlight inside the vehicle and noticed "loose cash" on or around the front passenger seat or center console, as well as a single, small Ziplock bag containing what appeared to be narcotics. Grasso immediately ordered the defendant out of the vehicle and placed him under arrest. After placing the defendant in the back of his police cruiser, Grasso told

Ryan about the bag of narcotics that he had seen and asked him to return to the defendant's vehicle to retrieve it and to search for additional contraband. Ryan had not noticed the Ziplock bag when he shined his flashlight inside the automobile even though, in contrast to Grasso, he had an unobstructed view of the center console and the front passenger seat from where he was standing.

Ryan, who recently had completed a course on motor vehicle searches and secret compartments, searched the defendant's vehicle. While examining the front seats, he noticed that the front passenger side rug was pulled out from under the dashboard. When he examined the area more closely, he found a black pouch containing eighty-eight small Ziplock bags of cocaine in a hidden compartment under the dashboard. He then searched the driver's side of the vehicle and discovered another hidden compartment, which held a black pouch containing approximately 100 "slabs" of cocaine and fifteen "folds" of heroin. The total amount of cash that was seized from the vehicle was $59.

Following his arrest, the defendant was charged with possession of opium with intent to sell by a person who is not drug dependent, possession of cocaine with intent to sell by a person who is not drug dependent, possession of narcotics with intent to sell within 1500 feet of a public housing project and failure to appear in the first degree. The defendant elected to be tried by a jury, and, following the evidentiary portion of the trial, the trial court dismissed the charge of possession of opium with intent to sell by a person who is not drug dependent on the ground that the state had failed to prove that the substance that the defendant possessed was, in fact, opium. Thereafter, the jury was unable to reach a verdict as to the remaining drug charges but found the defendant guilty of failure to appear in the first degree. The trial court declared a mistrial as to the remaining

drug charges and sentenced the defendant to five years imprisonment on the failure to appear charge. The state elected to retry the defendant and, prior to retrial, filed an amended information charging the defendant with unlawfully transporting "a narcotic substance" with intent to sell by a person who is not drug dependent, unlawfully transporting a narcotic substance within 1500 feet of a public housing project, and possession of a narcotic substance. On the first day of trial, the state filed a second amended information charging the defendant with unlawfully transporting "cocaine and heroin" with intent to sell by a person who is not drug dependent, unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project, and possession of cocaine. The jury found the defendant guilty of all charges, and the trial court rendered judgment in accordance with the jury's verdict.[4] The defendant appealed to the Appellate Court from the judgment of conviction, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that his constitutional right to present a defense was violated when the trial court excluded evidence, proffered by the defendant, that Kim Jackson, a convicted drug offender, had driven Lathrop's vehicle within twenty-four hours of the defendant's arrest and, on previous occasions, had left drugs and money in that vehicle.[5] The state contends that the

[4] The trial court sentenced the defendant to a total effective term of eight years imprisonment, which was to run consecutively to any other sentence that the defendant then was serving, including the five year sentence for failure to appear in the first degree.

[5] The defendant also raises a claim under article first, § 8, of the Connecticut constitution. He does not contend, however, that the state constitution affords him any greater protection than that afforded under the federal constitution. Accordingly, for purposes of this appeal, we treat the federal and state constitutions as embodying the same level of protection. See, e.g.,

defendant failed to preserve his claim because he did not offer the excluded evidence at trial for the purpose of establishing third party culpability but, rather, merely to demonstrate that other individuals had access to the vehicle. The state also maintains that, even if the claim is preserved, the trial court did not abuse its discretion in excluding the evidence because the defendant failed to establish a direct connection between Jackson and the drugs. Specifically, the state argues that the defendant did not proffer testimony that anyone had seen Jackson hiding the drugs in the vehicle, that Jackson actually had possessed drugs while driving the vehicle, or that Jackson had arranged to regain possession of the vehicle at a later time for the purpose of retrieving the drugs. Finally, as an alternative basis for upholding the trial court's exclusion of the proffered evidence, the state asserts that the evidence is inadmissible under §§ 4-4 (a)[6] and 4-5 (a)[7] of the Connecticut Code of Evidence, which preclude, with certain exceptions not applicable to this case, the admission of evidence of a person's bad character and other crimes, wrongs or acts. We conclude that the defendant's claim is preserved and that his right to present a defense was violated as a result of the trial court's exclusion of the proffered evidence.

The following facts and procedural history are relevant to our resolution of this claim. At trial, the senior assistant state's attorney (state's attorney) called

_State_ v. _Jones_, 281 Conn. 613, 647 n.26, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007).

[6] Section 4-4 of the Connecticut Code of Evidence provides in relevant part: "(a) Character evidence generally. Evidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion . . . ."

[7] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) Evidence of other crimes, wrongs or acts inadmissible to prove character. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person. . . ."

Lathrop, the defendant's girlfriend at the time of the alleged crimes, as a witness. She testified that, on May 10, 2002, she and her children drove from their home in Ansonia to visit the defendant at his home in Bridgeport. Sometime after 11 p.m., she asked the defendant to go to a store to buy milk for her nineteen month old daughter. He agreed, and she lent him her vehicle for the purpose of running the errand. The defendant never returned with the milk but called Lathrop the next morning to inform her that he had been arrested.

On cross-examination, defense counsel asked Lathrop whether she had lent her automobile to anyone else on the day before the defendant's arrest. The state's attorney objected to the question on the ground that the defendant improperly was attempting to raise a third party culpability defense because there was no evidence connecting a third party to the offenses with which the defendant had been charged. The court allowed the question for the limited purpose of establishing "what happened that day with the automobile . . . ." Defense counsel then asked Lathrop whether she recalled loaning her automobile to her roommate. The state's attorney again objected, and the trial court excused the jury and asked defense counsel to explain the relevance of the question. Defense counsel responded that the defendant's contention at trial would be that the drugs found in Lathrop's vehicle did not belong to the defendant and that he was unaware that they were in the vehicle at the time of his arrest. Defense counsel then explained that, at a January 6, 2003 hearing to revoke the defendant's probation, Lathrop testified that two individuals, Lonnie Shepard and Kim Jackson, had driven the vehicle on May 10, 2002, and that Jackson, the father of Lathrop's children, had driven the vehicle for the entire week preceding the defendant's arrest. Defense counsel argued that he would offer Lathrop's testimony for the purpose of establishing that

other people had greater access to Lathrop's vehicle than did the defendant.

The state's attorney objected to the proffered testimony, claiming that Shepard and Jackson had substantial criminal records involving the sale of drugs, that defense counsel's real purpose in presenting Lathrop's testimony was to suggest that the drugs belonged to them and that that contention was improper in the absence of evidence directly connecting the two men to the drugs. The trial court responded that it might agree with the state's attorney if the drugs had been in plain view but that all of the drugs at issue in the case, with the exception of a single, small Ziplock bag containing cocaine that had been found on or around the center console or front passenger seat, were hidden in secret compartments and, consequently, could have been placed there by someone else.

Thereafter, the court called a short recess to research the law on third party culpability evidence. When the proceedings resumed, the court stated that the practical effect of permitting Lathrop to testify that she had lent her automobile to Shepard and Jackson would be to suggest that they, and not the defendant, had placed the drugs in the vehicle. The court then sustained the state's attorney's objection to that testimony on the ground that it did not directly connect Shepard and Jackson to the crime but, rather, raised only a "mere suspicion" of their involvement.

In response to the court's ruling, defense counsel requested that he be permitted to make a proffer of Lathrop's entire January 6, 2003 testimony, in which she stated that Jackson was the father of her children and that he had driven her automobile for the entire week preceding the defendant's arrest. Lathrop further stated that, when Jackson returned the vehicle to her on May 10, 2002, the day before the defendant's arrest,

it was "junky" and there was loose money in the visor and in the glove compartment. Lathrop testified that, on previous occasions after Jackson had returned the vehicle to her, she had found drugs in it, including cocaine, and that he continued to leave his drugs in her vehicle, in her home and in her mother's home, even though she repeatedly had asked him not to do so. Lathrop further stated that, on the day before the defendant's arrest, she had found marijuana in the vehicle after Jackson returned it to her. Finally, Lathrop testified that, prior to the defendant's arrest, the defendant had driven her vehicle on only two occasions and never had left drugs in it.

Defense counsel also proffered evidence of Jackson's criminal record, which included convictions for manufacturing, distributing and dispensing narcotics. Defense counsel further informed the court that Jackson then was incarcerated in New Jersey for drug related offenses. The state's attorney responded that the defendant also had a criminal record involving the sale of drugs. Thereafter, the court determined that it was "going to stick by its ruling. I think there is possible motive. I think there's possible suspicion. But I'm not going to find that . . . the direct evidence needed for the finding of possible third party culpability lies here."

We begin our analysis by addressing the state's contention that the defendant's constitutional claim is not preserved because the defendant sought to introduce Lathrop's testimony to establish that other individuals had access to the vehicle and not to raise a third party culpability defense. We find no merit in this contention. It is clear from the record that, although the defendant initially sought to introduce the evidence for a more limited purpose, the trial court treated the proffered testimony as third party culpability evidence. More importantly, the defense treated the testimony as giving rise to a third party culpability claim after the court

initially had ruled that the evidence was inadmissible. At that time, defense counsel asked to be permitted to make a proffer of Lathrop's entire probation revocation hearing testimony and Jackson's criminal record for the purpose of preserving the claim for review. In light of this procedural history, the state cannot prevail on its contention that the defendant's constitutional claim is not preserved.

We turn, therefore, to the merits of the defendant's contention. It is well established that "[t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded. . . .

"We have recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that directly connects a third party to the crime . . . . It is not enough to show that another had the motive to

commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Citations omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624–25, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy. . . . Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, we have stated [that] [s]uch evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of third party culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt. . . . In other words, evidence that establishes a direct connection between a third party and the charged offense is relevant to the central question before the jury, namely, whether a reasonable doubt exists as to whether the defendant committed the offense. Evidence that would raise only a bare suspicion that a third party, rather than the defendant, committed the charged offense would not be relevant to the jury's determination. A trial court's decision, therefore, that third party culpability evidence proffered by the defendant is admissible, necessarily entails a determination that the proffered evidence is relevant to the jury's determination of whether a reasonable doubt exists as to the defendant's guilt." (Citations omitted; internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 609–10, 935 A.2d 975 (2007). "Finally, [t]he trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only

if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *West,* supra, 274 Conn. 626.

Applying these principles to the facts of the present case, we conclude that the trial court improperly excluded evidence that Jackson, a convicted drug dealer, drove Lathrop's vehicle within twenty-four hours of the defendant's arrest. The trial court found that the evidence that the defendant proffered established a possible motive for Jackson to commit the crime but did not establish a direct connection between Jackson and the crime. Although we agree with the trial court that the evidence established motive, we disagree that it failed to demonstrate a sufficiently direct connection between Jackson and the crime. To the contrary, Lathrop's testimony placed Jackson at the scene of the crime—her vehicle—within twenty-four hours of the defendant's arrest and in possession of drugs. The fact that Jackson borrowed Lathrop's vehicle on the same day that the defendant had borrowed it provided Jackson with the opportunity to place the drugs inside the secret compartments. Jackson's prior convictions for the manufacture and sale of narcotics, and his history of leaving drugs and money in the very same vehicle, provide a substantial basis for inferring that he may have done so on the day in question. Moreover, according to Lathrop, the defendant had borrowed her vehicle on only two occasions prior to his arrest, and for a relatively short period of time on the night of his arrest. In contrast, Jackson had used Lathrop's vehicle throughout the entire week preceding the defendant's arrest. Furthermore, the vast majority of the drugs found in the vehicle were secreted, out of view and under the dashboard; consequently, at a minimum, it is plausible that the defendant was unaware that the drugs had been hidden there. Finally, the defendant's sole defense at trial was that the drugs found in

Lathrop's vehicle belonged to someone else, and that he was unaware that they were in the vehicle when he was stopped by the police. Thus, the excluded evidence was highly relevant to the defendant's defense and to the central question before the jury, namely, whether a reasonable doubt existed as to the defendant's guilt. We conclude, therefore, that the trial court's exclusion of the third party culpability evidence deprived the defendant of the opportunity to present his version of the facts to the jury and to explain to the jurors who, if not him, committed the offenses with which he was charged.

The state maintains, nevertheless, that the trial court's exclusion of the evidence on the ground that it did not directly connect Jackson to the crime is supported by the Appellate Court's decision in *State* v. *Williams*, 30 Conn. App. 654, 621 A.2d 1365 (1993), and this court's decision in *State* v. *Delossantos*, 211 Conn. 258, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). We are not persuaded by the state's contention.

In *Williams*, the defendant, Edward Williams, claimed, inter alia, that the trial court abused its discretion in excluding evidence that a third party may have committed the drug offenses with which he was charged. *State* v. *Williams*, supra, 30 Conn. App. 655. Williams was charged with several crimes after certain New Haven police officers executed a search warrant at the apartment of his girlfriend, Lissette Gotay. Id. Although Williams frequently stayed at Gotay's apartment, he was not present when the warrant was executed. Id. During the search, the police seized a scale, a pager, cash and numerous glassine packets of cocaine that had been hidden around the apartment. Id. In addition, the police found Williams' jacket in a closet and discovered $1300 packaged in groups of $100 in a pocket of that jacket. Id. At Williams' trial, Gotay testified that,

when the police officers discovered the drugs in her apartment, she immediately informed them that they belonged to Williams. Id., 655–56. She also testified that, following the search, Williams admitted to her that the drugs belonged to him. Id., 656.

Following his conviction, Williams appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had excluded evidence that the drugs that the police seized from Gotay's apartment belonged to Gotay's brother. Id., 663. As the Appellate Court noted, "[t]he excluded evidence would have shown that [Gotay's brother] was on probation for a narcotics conviction, was living in a halfway house and had recently had a urine analysis that tested positive for narcotics. In addition, [Gotay's brother] had access to a key to Gotay's apartment and was found there the day after the [search]. The trial court ruled that the evidence was merely speculative and [declined] to admit it." Id. The Appellate Court then rejected Williams' constitutional claim in conclusory fashion. Id.

We disagree with the state's contention that *Williams* is factually similar to the present case. Although, in both cases, the third parties that the defendants sought to inculpate had previous drug convictions, in *Williams*, in contrast to the present case, there was no evidence that the third party—Gotay's brother—was present at the location where the drugs were discovered in the days immediately preceding Williams' arrest. More importantly, there was no evidence that Gotay's brother previously had left drugs and money at that location. Thus, the evidence of third party culpability proffered in *Williams* raised no more than a bare suspicion that Gotay's brother had committed the crime. The claim in *Williams* was predicated primarily on the fact that Gotay's brother had used drugs and had a prior drug conviction. In the present case, there was evidence from which the jury reasonably could have concluded that

Jackson was the owner of the drugs, thereby raising a reasonable doubt about the defendant's guilt.

We also disagree with the state that *State* v. *Delossantos*, supra, 211 Conn. 258, governs the defendant's claim. The defendant in *Delossantos*, Cesar Santiago Delossantos, was convicted of the crimes of unlawful possession and transportation of cocaine with intent to sell and possession of a weapon in a motor vehicle without a permit. Id., 260. He was arrested in Danbury after the police stopped him for speeding and observed a partially concealed revolver on the floor of the vehicle. Id., 261–62. The police later discovered a bag containing more than seventeen ounces of cocaine in the hatchback area of the vehicle. Id., 262. At trial, the state adduced the testimony of Percio Urena, the vehicle's owner, who testified that he had lent the vehicle to Delossantos two days before Delossantos' arrest so that Delossantos could drive to New York to visit family, and that he, Urena, had no knowledge of the cocaine or handgun that the police had found in the vehicle. Id., 267–68. Over the state's objection, Delossantos sought to introduce evidence that Urena was a drug dealer. Id., 268. Specifically, Delossantos proffered the testimony of Dinioio Jimenez, an acquaintance of Urena's, who was prepared to testify that it was well known, even to the police, that Urena was a drug dealer and that Jimenez personally had observed Urena selling drugs out of Urena's apartment. Id. The trial court excluded Jimenez' testimony on two grounds, one of which was that it did not directly connect Urena to the charged offenses. Id., 269.

On appeal to this court, Delossantos claimed, inter alia, that the trial court's exclusion of Jimenez' testimony violated his right to present a defense because that testimony, together with the fact of Urena's ownership of the vehicle, gave rise to a reasonable likelihood that Urena had committed the crime. Id., 269–70. In

rejecting Delossantos' claim, we emphasized that the case was not one in which police had discovered drugs in an automobile just "minutes" after the operator had borrowed the vehicle but, rather, that two days had lapsed between the time that Delossantos borrowed Urena's vehicle and the time of his arrest. Id., 271.

We thus distinguished the case from *State* v. *Vigee*, 518 So. 2d 501 (La. 1988); see *State* v. *Delossantos*, supra, 211 Conn. 271–72; in which the Louisiana Supreme Court held that the trial court's exclusion of third party culpability evidence violated the right of the defendant, Joseph Vigee, to present a defense. *State* v. *Vigee*, supra, 504. The evidence in *Vigee* indicated that Vigee had borrowed a vehicle from a friend approximately thirty to sixty minutes before the police approached him while he was sitting in it. See id., 502–503. There was conflicting evidence as to whether the officers approached with guns drawn. See id. In any event, when Vigee moved suddenly, one of the officers shot him. See id., 502. Police later discovered heroin on the floor of the vehicle, and Vigee was charged with possession of that drug with intent to distribute. Id.

At trial, Vigee claimed that the drugs found in the vehicle were not his and sought to introduce evidence that the registered owner of the vehicle was a known narcotics dealer with a history of assaulting police officers. See id., 503. Vigee's defense was that the police approached him on the day of his arrest because they mistakenly thought that he was the owner of the vehicle. See id., 504. The trial court excluded the evidence as irrelevant and unreliable; id., 503; and a jury subsequently found Vigee guilty. Id., 502. On appeal, the Louisiana Supreme Court reversed, concluding that "a defendant who is arrested in an automobile he does not own, which recently belonged to a known drug dealer, is entitled to show evidence of ownership which

might suggest that the drugs on the floor belonged to someone else." Id., 504.

We are persuaded that the present case bears a far greater resemblance to *Vigee* than it does to *Delossantos*. Like Vigee, the defendant in the present case sought to introduce evidence that he had borrowed a vehicle in which drugs were found shortly before his arrest, and that a convicted drug dealer, namely, Jackson, had driven it less than twenty-four hours earlier. In affirming the trial court's judgment in *Delossantos*, we emphasized that Delossantos' "possession of the automobile for the two days immediately preceding his arrest attenuated Urena's connection to the automobile." *State* v. *Delossantos*, supra, 211 Conn. 271. In the present case, however, there is no real attenuation between Jackson's possession of the vehicle and the defendant's use of the same vehicle. There also was no evidence in *Delossantos*, as there is in the present case, that the alleged third party perpetrator had a history of leaving drugs in the vehicle, or that he previously had been convicted of drug offenses similar in nature to the charged offenses.[8] Accordingly, we conclude that *Delossantos* is readily distinguishable.

[8] Delossantos also sought to introduce an incident report, prepared by the Danbury police department, describing the execution of a search warrant at Urena's residence approximately one year prior to Delossantos' arrest. *State* v. *Delossantos*, supra, 211 Conn. 269. According to the report, police had seized more than $4000 in cash and found several items of drug paraphernalia, as well as two guns. Id. Urena and another man were arrested at the time but never prosecuted. Id., 268–69. The state contends that the third party culpability evidence in the present case resembles the evidence that we concluded properly was excluded in *Delossantos*. Specifically, we concluded in *Delossantos* that the proffered evidence, although suggestive that Urena may have been involved in the drug trade, did not directly connect Urena to the charged offenses and, moreover, was not inconsistent with Delossantos' guilt because both men could have been involved in the sale of drugs. Id., 271–72. As we previously indicated, however, in contrast to the evidence in the present case, there was no evidence in *Delossantos* that Urena transported or concealed drugs in the vehicle in which Delossantos was arrested, or that Urena had access to the vehicle shortly before the arrest. If Delossantos had proffered such evidence in support of his third

Although there are no Connecticut cases precisely on point, the defendant refers to courts in other jurisdictions that have reversed convictions when an accused was denied the opportunity to present third party culpability evidence, similar in nature to the evidence proffered in the present case, to support a claim that drugs found in an automobile did not belong to the accused but, rather, had been placed there by someone else. The defendant places particular reliance on *Beaty* v. *Commonwealth,* 125 S.W.3d 196 (Ky. 2003), and *United States* v. *Vallejo,* 237 F.3d 1008, amended on other grounds, 246 F.3d 1150 (9th Cir. 2001). We agree that these cases support the defendant's claim that he was constitutionally entitled to have the jury consider his proffered third party culpability evidence.

We turn first to *Beaty,* in which the defendant, Roger Beaty, was charged with numerous drug offenses in connection with his arrest for driving under the influence of an impairing substance. *Beaty* v. *Commonwealth,* supra, 125 S.W.3d 201. In a search incident to arrest, police discovered various drugs and drug paraphernalia on Beaty's person. Id. A search of the backseat and trunk of the car that Beaty was driving revealed a methamphetamine laboratory, and, according to testimony from one of the investigating police officers, it appeared that Beaty was in the process of manufacturing methamphetamines "while driving down the road." (Internal quotation marks omitted.) Id. At trial, Beaty and his girlfriend, Marion Ann Hanks, who was a passenger in the car, testified that they had borrowed the vehicle from Pamela Kuhl, Hanks' friend and the owner of the vehicle, shortly before their arrest, to go "to do laundry and were ignorant of the contents of the

party culpability defense, the trial court's exclusion of that evidence likely would have constituted an abuse of discretion. Indeed, even if we were to apply an abuse of discretion standard, we view that case as presenting a very close question.

[backseat] and trunk." Id. Hanks testified that the vehicle always was messy and that she had not noticed the methamphetamine equipment in the backseat when she entered the vehicle. Id. At trial, Beaty sought to introduce evidence that Kuhl had a motive to commit the crime because she believed that Hanks was having an affair with Kuhl's boyfriend. Id., 204. According to Beaty, after discovering the affair, Kuhl had contrived to loan the vehicle with the mobile methamphetamine laboratory to Hanks in order to eliminate her as a rival but, instead, had incriminated Beaty. Id. Beaty also presented evidence that Kuhl was the type of person to engage in such a scheme. See id., 204–205. The trial court excluded the evidence, however; id., 204; and a jury subsequently found Beaty guilty of various drug offenses, including the methamphetamine related offenses. See id., 201–202.

On appeal to the Kentucky Supreme Court, Beaty claimed, inter alia, that his right to present a defense to the methamphetamine related charges was violated when the trial court excluded evidence of Kuhl's motive and opportunity to commit the crime. Id., 204. The Kentucky Supreme Court agreed. See id., 208–209. In addressing this claim, the court indicated that, although the right of an accused to present a defense is fundamental, there are limits to that right with regard to the presentation of third party culpability evidence. See id., 206–208. "For example, evidence of motive alone is insufficient to guarantee admissibility. . . . In a homicide case, a defendant is not entitled to parade before the jury every person who bore some dislike for the victim without showing that the [alleged perpetrator] at least had an opportunity to commit the murder. . . .

"In the same way, evidence of opportunity alone is insufficient to guarantee admissibility. . . . Simply showing that the [alleged perpetrator] was at the scene of the crime, without also showing some connection

between [that person] and the crime, will generally not be allowed." (Citations omitted.) Id., 208.

The court further explained, however, that "[a] defendant who is able to offer evidence of *both* motive *and* opportunity by an [alleged perpetrator] . . . is in a different position. . . . [A]ppellate courts have almost invariably reversed when proffered evidence of both motive and opportunity has been excluded by the trial court." (Emphasis in original.) Id. The court then concluded that Beaty had proffered such evidence, notwithstanding the implausibility of his defense. See id., 209. The court emphasized that "the right to present a defense . . . [is] the right to present [one's] version of the facts . . . to the jury so [that] it may decide where the truth lies." (Internal quotation marks omitted.) Id., quoting *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). "[I]f the evidence [of third party culpability] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." (Internal quotation marks omitted.) *Beaty* v. *Commonwealth*, supra, 125 S.W.3d 209, quoting 1A J. Wigmore, Evidence (Rev. Ed. 1983) § 139, p. 1724.

The defendant also relies on *United States* v. *Vallejo*, supra, 237 F.3d 1008, in which the Ninth Circuit Court of Appeals concluded that the District Court had abused its discretion in excluding evidence that someone other than the defendant, Guillermo Vallejo, had placed drugs in a vehicle that Vallejo was driving at the time of his arrest. Id., 1024. Vallejo was charged with importation and possession with intent to distribute marijuana after United States customs agents discovered twenty-one packages of marijuana concealed in various parts of the vehicle that he was driving. See id., 1012–13. At the time of his arrest, Vallejo told the agents that a man

whom he had met in Mexico had paid him $15 to import the vehicle into the United States. Id., 1013. At trial, Vallejo sought to introduce evidence that the former owner of the vehicle, Jose Jaramillo, previously had been convicted of transporting a similar quantity of marijuana into the United States, through the same port of entry, using the same method of concealment, albeit in a different vehicle. Id., 1022. Vallejo argued that Jaramillo "had purchased the car [that] Vallejo was driving on January [22], been arrested in another vehicle on January [28] for importation of marijuana, and, on February [21], an unknown person had executed a release of liability to transfer the car out of Jaramillo's name. Vallejo was stopped . . . [and arrested] on March [4]. [Thus, Vallejo] argued that there was 'a clear inference' that Jaramillo had gotten this car ready to go and then sold it after his arrest, fearing that he would be caught importing drugs a second time." Id. Prior to trial, the government filed a motion in limine seeking to preclude Vallejo from mentioning Jaramillo at trial. Id. The District Court granted the motion on the ground that the evidence was "more [obfuscatory] than anything else." (Internal quotation marks omitted.) Id., 1023.

On appeal, Vallejo claimed that the District Court improperly had excluded the third party culpability evidence. A panel of the United States Court of Appeals for the Ninth Circuit agreed and reversed the judgment of the District Court. Id., 1024, 1026. The Court of Appeals explained that, "[e]ven if the defense theory [was] purely speculative, as the [D]istrict [C]ourt characterized it, the evidence would be relevant." Id., 1023. The Court of Appeals further explained that "it is the role of the jury to consider the evidence and determine whether it presents 'all kinds of fantasy possibilities,' as the [D]istrict [C]ourt concluded, or whether it presents legitimate alternative theories for how the crime

occurred." Id. "[N]o evidence was presented to suggest exactly how the drugs ended up in the car Vallejo was driving. . . . Vallejo claimed [that] he did not know there were drugs in the car, but he was not allowed to provide an answer for the jurors' question: 'If [Vallejo] did not know there were drugs in the car and did not place them there himself, who did?' " Id.

As in *Beaty* and *Vallejo*, the defendant in the present case was arrested while in possession of a vehicle that did not belong to him. He claimed that he did not know anything about the drugs that were found secreted in the vehicle and proffered evidence that a convicted drug dealer, who previously had left drugs and money in the vehicle, had driven the vehicle shortly before him. That evidence was highly relevant to the defendant's theory of defense. We conclude, therefore, that when, as in the present case, a person is arrested for the possession of drugs that are concealed in a vehicle that does not belong to him, and he adduces evidence that another person had both the motive and the opportunity to commit the crime and actually operated the vehicle within a twenty-four hour period, it is improper for the trial court to exclude that evidence.

The state contends that the trial court properly excluded the evidence proffered by the defendant because he had failed to demonstrate that someone witnessed Jackson place the drugs in the vehicle or that Jackson had arranged to regain possession of the vehicle at a later time in order to retrieve the drugs. The state asserts that "[i]t strains credulity to think that anyone would hide such a valuable stash of narcotics in a borrowed car and then return it to its owner with no plan for retrieval." The state, of course, is free to make this argument at any subsequent trial to support its contention that the defendant's third party culpability defense is unworthy of belief. The mere fact that the state's argument ultimately may prove to be persuasive,

however, is an inadequate reason to bar the proffered evidence. As we have explained, third party culpability evidence is admissible if it raises more than a bare suspicion that someone else has committed the crime. See, e.g., *State* v. *Arroyo*, supra, 284 Conn. 610, 612. Evidence that connects a third party to the charged offense by demonstrating that the third party possessed both a motive and an opportunity to commit the crime satisfies this standard when, as in the present case, that evidence is sufficient to give rise to a reasonable doubt concerning the defendant's guilt. In other words, if the jury reasonably might view such third party culpability evidence as providing a credible, alternative theory as to who committed the crime, the defendant is entitled to have the jury consider that evidence in determining whether the state has proven its case against the defendant beyond a reasonable doubt. Cf. *State* v. *Berger*, 249 Conn. 218, 235, 733 A.2d 156 (1999) ("The primary object of third party suspect testimony is not to prove the guilt of the third party but to disprove the guilt of the accused. If it raises a reasonable doubt of his guilt it accomplishes its object." [Internal quotation marks omitted.]).

The state finally contends, as an alternative basis for upholding the trial court's exclusion of the evidence that Jackson was a convicted drug dealer who previously had left drugs in Lathrop's car and home on other occasions, that such evidence was inadmissible under §§ 4-4 (a) and 4-5 (a) of the Connecticut Code of Evidence. Section 4-4 (a) of the Connecticut Code of Evidence provides in relevant part that "[e]vidence of a trait of character of a person is inadmissible for the purpose of proving that the person acted in conformity with the character trait on a particular occasion . . . ." Section 4-5 (a) of the Connecticut Code of Evidence provides that "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad

character or criminal tendencies of that person." The state asserts that, although § 4-5 (b) provides for certain exceptions to the inadmissibility of other crimes, wrongs or acts evidence, the evidence that the defendant proffered does not fall within any of those exceptions. We conclude that neither § 4-4 (a) nor § 4-5 (a) bars admission of character evidence or evidence of other crimes, wrongs or acts when that evidence is offered for the purpose of raising a reasonable doubt as to a defendant's guilt and otherwise satisfies the criteria for the admissibility of third party culpability evidence.

"We begin our review of the issue presented by noting that, [a]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . *State* v. *Nunes*, 260 Conn. 649, 684, 800 A.2d 1160 (2002); see also Conn. Code Evid. § 4-5 (a). Under § 4-5 (b) of the Connecticut Code of Evidence, however, evidence of prior misconduct may be admitted when it is offered for a purpose other than to establish the defendant's bad character or criminal propensity. . . . [P]rior misconduct evidence may be admissible to prove [among other things] intent, identity, motive, malice or a common plan or scheme. Conn. Code Evid. § 4-5 (b). Thus, the fact [t]hat evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material . . . . *State* v. *Hauck*, 172 Conn. 140, 144, 374 A.2d 150 (1976).

"In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evi-

dence must outweigh [its] prejudicial effect . . . ." (Internal quotation marks omitted.) *State* v. *Jacobson,* 283 Conn. 618, 630, 930 A.2d 628 (2007).

This court has observed that "there is no substantive difference between the pertinent federal and Connecticut rules [of evidence governing evidence of other crimes, wrongs or acts] . . . ." *State* v. *Aaron L.,* 272 Conn. 798, 825, 865 A.2d 1135 (2005). The federal counterpart to § 4-5 is rule 404 (b) of the Federal Rules of Evidence, which provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." "By combining into one section the prohibition against the use of prior misconduct evidence to prove character or conduct in conformity with the limited purposes for which such evidence is admissible, rule 404 (b) of the Federal Rules of Evidence simply expresses the same principles collectively that are expressed separately in subsections (a) and (b) of § 4-5 of the Connecticut Code of Evidence." *State* v. *Aaron L.,* supra, 824–25.

"Rule 404 (b) . . . is typically employed by federal prosecutors seeking to rely on evidence of a criminal defendant's prior convictions or other misconduct as proof of that defendant's motive, opportunity, intent, preparation, plan, knowledge, or identity with regard to a different crime for which the defendant is being prosecuted." (Internal quotation marks omitted.) *United States* v. *Reed,* 259 F.3d 631, 634 (7th Cir. 2001).

"The [r]ule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." (Internal quotation marks omitted.) *United States* v. *Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005). "Evidence is characterized as reverse 404 (b)-evidence when a defendant offers evidence under the [r]ule . . . against a third person in order to exculpate himself. In reverse 404 (b)-evidence cases . . . the person against whom the evidence is being offered is not a party to the case and, therefore, will not be unfairly prejudiced if the evidence is admitted." *Rivera* v. *Rivera*, 262 F. Sup. 2d 1217, 1225 (D. Kan. 2003). Because, in such cases, the person against whom the evidence is offered will not be unfairly prejudiced, most federal courts that have considered the issue have held "that admissibility of reverse 404 (b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.' *United States* v. *Stevens*, 935 F.2d 1380, [1404–1405 (3d Cir. 1991)]; see also *United States* v. *Reed*, [supra, 634]." *United States* v. *Montelongo*, supra, 1174. But see *United States* v. *Lucas*, 357 F.3d 599, 605, 606 (6th Cir. 2004) (observing that "prior bad acts are generally not considered proof of any person's likelihood to commit bad acts in the future," and, therefore, "the standard analysis of [r]ule 404 [b] evidence should generally apply in cases [in which] such evidence is used with respect to an absent third party").

We find persuasive the analysis of the United States Court of Appeals for the Second Circuit, which, in considering the issue before us, concluded: "[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword.

The prosecution, in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial. [1A J. Wigmore, supra, § 58.2, p. 1212]. As Dean [John Henry] Wigmore points out, the evidence 'is objectionable not because it has no appreciable probative value but because it has too much.' [Id.] Presumably, the 'too much' argument means that a guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed. Wigmore also identifies objections based on the risk that the jury will convict because the defendant may not have been punished for his prior offenses and the injustice of requiring the defendant to defend against a series of accusations. [Id., p. 1215]. These possibilities of prejudice must be assessed even in cases [in which] the prosecutor offers similar acts evidence, not to prove the character of the accused, but to prove one of the permissible subsidiary facts listed in [r]ule 404 (b), such as intent or plan . . . . However, risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense." (Citation omitted.) *United States* v. *Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984); see also *United States* v. *Lucas*, supra, 357 F.3d 605 (recognizing, "as do several [other federal circuit courts], that . . . evidence [of other crimes, wrongs or acts] when presented by the defense, requires [the court] to reconsider [its] standard analysis, as the primary evil that may result from admitting such evidence against a defendant—by tainting his character— is not present in the case of [rule] 404 [b] evidence used against an absent person"); *United States* v. *Gonzales-Sanchez*, 825 F.2d 572, 582 n.25 (1st Cir.) ("[i]nasmuch

as this evidence does not concern past criminal activity of [the defendant], [r]ule 404 [b] is inapplicable"), cert. denied sub nom. *Latorre* v. *United States*, 484 U.S. 989, 108 S. Ct. 510, 98 L. Ed. 2d 508 (1987); *United States* v. *Krezdorn*, 639 F.2d 1327, 1333 (5th Cir. 1981) ("[When] the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded. When, however, the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith. When the evidence will not impugn the defendant's character, the policies underlining [r]ule 404 [b] are inapplicable.").

We also find persuasive the observation of the Montana Supreme Court that "[u]nfair prejudice against the government [in this context] is rather rare. Unfair prejudice [to the government] means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one. . . . Thus, the only possible unfair prejudice against the government occurs when . . . evidence [of other crimes, wrongs or acts] tends to make the jury more likely to find a defendant not guilty despite the proof beyond a reasonable doubt. . . . By proving that someone else committed the crime, [however] reverse 404 (b) evidence is not likely to generate that risk of jury infidelity, and thus does not generate unfair prejudice. Only in the rarest circumstances will the [trial] court be presented with unfair prejudice to the [s]tate in [the context] . . . of reverse 404 (b) evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Clifford*, 328 Mont. 300, 311, 121 P.3d 489 (2005).

We note, finally, that, "[c]onsistent with [a] defendant's right [under the sixth amendment] fairly to inform the jury of facts material to the defense, [i]t

has long been the law in this state that, in a homicide prosecution, an accused may introduce evidence . . . of the [deceased] victim's violent character to prove that the victim was the aggressor, regardless of whether such character evidence had been communicated to the accused prior to the homicide. *State* v. *Miranda*, [176 Conn. 107, 109, 405 A.2d 622 (1978)]. In *Miranda*, we determined that the victim's violent character could be proven by reputation testimony, by opinion testimony, or by evidence of the [victim's] convictions for crimes of violence, irrespective of whether the accused knew of the [victim's] violent character or of the particular evidence adduced at the time of the death-dealing encounter." (Citations omitted; internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 422–23, 636 A.2d 821 (1994). In our view, the right of an accused to offer evidence of a person's character, past criminal convictions or other prior bad acts, in support of a third party culpability defense, also is compelled by the right to present a defense guaranteed by the sixth amendment, and, as a general matter, its use should be limited only by the rules relating to relevancy and balancing.

Thus, consistent with the view of the majority of courts that have considered the issue, we conclude that the policies underlying §§ 4-4 (a) and 4-5 (a) of the Connecticut Code of Evidence have extremely limited applicability when the defendant offers evidence of a character trait or other crimes, wrongs or acts to prove that someone else committed the crime charged. We are persuaded that the rules pertaining to the admission of third party culpability evidence are sufficiently stringent to protect against any unfair prejudice to the state or confusion of the issues that might arise when such evidence is offered to support a third party culpability defense. Consequently, we reject the state's alternative ground for upholding the trial court's exclusion of the

evidence that the defendant had proffered in support of his third party culpability defense.

In light of our determination that the trial court's exclusion of the defendant's third party culpability evidence violated the defendant's right to present a defense, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. See, e.g., *State* v. *Randolph*, 284 Conn. 328, 377, 933 A.2d 1158 (2007). "Whether a constitutional violation is harmless in a particular case depends [on] the totality of the evidence presented at trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 832, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). The state cannot meet its burden. The sole issue at trial was whether the defendant was the person who placed the drugs in Lathrop's vehicle. Except for a single, small Ziplock bag of cocaine discovered on or around the center console or front passenger seat, all of the drugs were concealed in secret compartments located under the dashboard. The defendant's theory of defense was that someone else had hidden the drugs in those compartments. He also claimed that he did not notice the small Ziplock bag of cocaine, which was in plain view to the officers, when he entered the vehicle in the dark, late at night. Indeed, one of the arresting officers, Ryan, testified that he, too, did not notice that lone bag when he shined his flashlight on the front passenger seat. In light of the fact that the evidence that the defendant proffered represented a plausible third party culpability defense, we cannot say that the trial court's exclusion of that evidence was harmless beyond a reasonable doubt.[9]

---

[9] The defendant also contends that the trial court improperly instructed the jury that the conduct of the police in connection with their investigation of the defendant was not an issue to be considered by the jury. We do not

## II

Although we have determined that the defendant is entitled to a new trial on all of the drug related charges, we address the defendant's claim that the evidence was insufficient to support his conviction of unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b) because, if that claim is meritorious, a retrial on that charge would be barred by principles of double jeopardy. See, e.g., *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005) (retrial is barred and defendant is entitled to acquittal when evidence is insufficient to support conviction). The defendant contends that the evidence was insufficient to support his conviction under § 21a-278a (b) because the state presented no evidence from which the jury reasonably could have found that he had intended to sell drugs within 1500 feet of a public housing project. In support of his claim, the defendant contends that the mere fact that the police stopped his vehicle for a traffic violation at a location within 1500 feet of a public housing project is insufficient to support a finding that he had intended to sell drugs at that location. We agree with the defendant.

The following facts and procedural history are relevant to our disposition of this claim. As we previously indicated, at approximately 1:30 a.m. on May 11, 2002, Officers Grasso and Ryan were on patrol near the Marina Village housing project when they observed the defendant driving a Toyota Camry in a northbound direction on Columbia Street. When the vehicle arrived at the intersection of Columbia Street and Johnson Street, the defendant turned right onto Johnson Street. The defendant failed to use a turn signal, and the officers immediately pulled him over. The officers subsequently

address this claim because neither party requested the instruction and the issue is not likely to arise upon retrial.

discovered a large quantity of drugs in the vehicle, which were packaged for sale, and $59 in currency, which was strewn over the center console or front passenger seat.

At the close of the state's case, defense counsel moved for a judgment of acquittal on the charge of unlawfully transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project, claiming that the officers' detention of the defendant near Marina Village was merely fortuitous and that the state had presented no evidence that he had intended to sell drugs at that location. The trial court denied the motion, adopting the view advanced by the state that § 21a-278a (b) does not require proof that a defendant intends to sell drugs within 1500 feet of a public housing project but only that he possesses drugs within 1500 feet of that location with intent to sell them somewhere. Although this view represented an incorrect principle of law; see *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995) (to establish violation of § 21a-278a (b), state must prove that defendant intended to sell drugs within proscribed geographic area); the trial court subsequently instructed the jury properly as to the state's burden under § 21a-278a (b), explaining that the state was required to prove that the defendant unlawfully was transporting cocaine and heroin and that he intended to sell those drugs at a particular location that was within 1500 feet of a public housing project.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the

evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 254, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S. Ct. 464, 172 L. Ed. 2d 328 (2008). "In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference

cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded [on] the evidence." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842–43, 911 A.2d 1086 (2007).

General Statutes § 21a-278a (b) prohibits any person from "transporting with the intent to sell or dispense, [or] possessing with the intent to sell or dispense . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . ." General Statutes § 21a-278a (b) further provides that, "[t]o constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . ." This court has held that "the plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within" 1500 feet of a public housing project, among other geographical designations. *State* v. *Denby*, supra, 235 Conn. 482. There is no requirement that the state prove that the defendant had actual knowledge that the location where he intended to sell drugs was within the proscribed area; id.; rather, the state must demonstrate only "that the defendant intended to sell or dispense those drugs in his or her possession at a specific location, which location happens to be within" 1500 feet of a public housing project, among other geographical designations. Id., 483.

"It is well established that the question of intent is purely a question of fact. Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evi-

dence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Silva*, 285 Conn. 447, 460, 939 A.2d 581 (2008).

The state maintains that the evidence adduced at trial supported a finding that the defendant intended to sell cocaine and heroin within 1500 feet of a public housing project because (1) one of the arresting officers testified that the area around Marina Village is known for heavy narcotics trafficking, (2) money was "strewn" on or near the center console or front passenger seat of the vehicle, and (3) the defendant "had been on his supposed mission to buy milk for [two and one-half] hours." The state contends that these three facts taken together gave rise to a reasonable inference that the money on or near the center console or front passenger seat was from a recent drug sale and that the defendant was "trawling for [more] customers at the time he was stopped." We are not persuaded.

Although the large quantity of drugs that the police found in the defendant's vehicle supports an inference that the defendant had intended to sell the drugs *somewhere*; see, e.g., *State* v. *Francis*, 90 Conn. App. 676, 682, 879 A.2d 457 (quantity of narcotics and manner of packaging indicative of intent to sell), cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005); it was insufficient to support a finding that he had intended to sell them within 1500 feet of Marina Village. See, e.g., *State* v. *Harris*, 60 Conn. App. 436, 439–40, 442–43, 759 A.2d 1040 (state conceded that seventy-one parcels of cocaine that were packaged for sale and found inside vehicle that was stopped immediately outside parking lot of public housing project was insufficient to support finding of intent to sell drugs at that location), cert. denied, 255 Conn. 907, 762 A.2d 911 (2000). "Mere pos-

session of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough [to prove a violation of § 21a-278a (b)]. Quite obviously, if [a person] is apprehended while coincidentally passing through a location, there is no logical inference that he intended to sell at the location of the apprehension." *State* v. *Lewis*, 113 Conn. App. 731, 747, 967 A.2d 618, cert. granted, 292 Conn. 906, 973 A.2d 105 (2009). Moreover, both of the arresting officers testified that they stopped the defendant near Marina Village solely on the basis of his failure to use a turn signal. The state adduced no evidence that the defendant was on his way to Marina Village, recently had been at Marina Village, or otherwise had engaged in any activity, suspicious or otherwise, that would give rise to a reasonable inference that he planned to sell drugs at or within 1500 feet of Marina Village. But cf. *State* v. *Myers*, 101 Conn. App. 167, 176, 921 A.2d 640 (2007) (defendant's transfer of drugs within proscribed area indicative of intent to sell drugs at that location), rev'd in part on other grounds, 290 Conn. 278, 963 A.2d 11 (2009); *State* v. *Knight*, 56 Conn. App. 845, 848, 852–53, 747 A.2d 13 (2000) (fact that defendant showed marijuana and cocaine to officer in plain clothes, who had asked for a " 'ten' " within proscribed zone, was sufficient to establish intent to sell within 1500 feet of school). Furthermore, the fact that Marina Village is known to be an area of heavy drug trafficking does not establish that the defendant sold drugs there or that he intended to do so in the two and one-half hour period prior to his arrest. Indeed, the record is devoid of evidence indicating whether the defendant intended to sell the drugs in Marina Village, within 1500 feet of Marina Village, or some greater distance from Marina Village. Consequently, although the fact that Marina Village is a place where drugs frequently are sold might make it more likely that the defendant was planning to sell

drugs there as opposed to some other discrete location, one can only speculate as to whether the defendant intended to sell drugs at or within 1500 feet of Marina Village.

Contrary to the state's claim, the two additional facts on which the state relies, namely, that $59 was found on or near the center console or front passenger seat of the vehicle that the defendant was driving and that the defendant had not returned from an errand to buy milk for more than two hours, also provide an inadequate basis for concluding that he had intended to sell cocaine or heroin at or within 1500 feet of Marina Village. The money strewn on or near the center console or front passenger seat of the vehicle could have been there for any number of reasons unrelated to the sale of drugs, and, even if the money was related to drug trafficking, there is nothing about that fact to suggest that the drug transactions occurred inside the proscribed area. Similarly, whether the defendant was on an errand to buy milk and, if so, the length of time that he purportedly took to accomplish that task have no bearing on whether the defendant intended to sell drugs within 1500 feet of Marina Village. In the absence of any evidence that the defendant engaged in conduct reflecting an intent to sell drugs at some location within the proscribed area, the defendant is entitled to a judgment of acquittal on the charge that he had violated § 21a-278a (b).[10]

III

We next address the defendant's claim that the trial court improperly denied his motion to dismiss the counts of the second amended information charging

_____

[10] The defendant also claims that § 21a-278a (b) is unconstitutionally vague as applied to his conduct in the present case. We do not address this claim in view of our determination that the defendant is entitled to a judgment of acquittal on the charge under that statute.

him with transporting cocaine and heroin with intent to sell and doing so within 1500 feet of a public housing project. The defendant contends that, because he previously had been acquitted of the heroin offense that comprised a part of each of those two counts, the double jeopardy clause of the fifth amendment barred the state from trying him again for those offenses as they related to heroin. We agree with the defendant.[11]

The following facts and procedural history are relevant to our disposition of this claim. In a substitute information dated August 8, 2005, the state charged the defendant in four counts with (1) possession of cocaine with intent to sell by a person who is not drug dependent in violation of § 21a-278 (b), (2) possession of opium with intent to sell by a person who is not drug dependent in violation of § 21a-278 (b), (3) possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b), and (4) failure to appear in the first degree in violation of § 53a-172 (a) (1). The case proceeded to trial, and, at the conclusion of the evidence, the trial court dismissed the charge of possession of opium with intent to sell by a person who is not drug dependent on the ground that the state had failed to prove that one of the narcotic substances that was seized from the defendant's vehicle was, in fact, opium.[12] Thereafter, the jury returned a verdict of guilty on the failure to appear charge but was unable to reach a verdict on the remaining two drug charges. The trial court thereafter declared a mistrial as to those charges.

---

[11] Although the defendant is entitled to a new trial on the charges of unlawfully transporting with intent to sell and possession because he was denied the right to present his third party culpability defense; see part I of this opinion; we address the defendant's double jeopardy claim for the purpose of clarifying that the double jeopardy violation in the present case does not bar the state from retrying the defendant on those charges as they relate to the defendant's transportation of cocaine as opposed to heroin.

[12] At that time, the state requested permission to amend the information to substitute the word "heroin" for the word "opium," but the trial court denied the state's request.

The state elected to retry the defendant and filed an amended information dated November 28, 2005, charging him in three counts with (1) unlawfully transporting "a narcotic substance" with intent to sell by a person who is not drug dependent in violation of § 21a-278 (b), (2) unlawfully transporting a narcotic substance with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b), and (3) possession of "a narcotic substance" in violation of § 21a-279 (a). On December 12, 2005, the defendant filed a motion for a bill of particulars in which he requested that the state specify what "narcotic or narcotics" the defendant allegedly had transported. He also filed a motion in limine in which he sought an order precluding the state and its witnesses from making any reference to heroin at the second trial. In that motion, the defendant alleged that, "if such evidence [is] admitted [at trial], the defendant's constitutional right against double jeopardy would be violated" because he previously had been "acquitt[ed]" of possession of that drug with intent to sell at the first trial.

The trial court heard argument on the defendant's motions on December 19, 2005, the first day of the second trial. At that time, defense counsel argued that the state should be required to file a bill of particulars indicating that the narcotic substance referred to in the amended information is cocaine because the word "narcotic substance" encompasses opiates, including heroin, and the defendant had been acquitted of possessing opium with intent to sell at the first trial. The trial court agreed that the amended information raised a double jeopardy concern with respect to opium but not as to any derivatives of opium. As a consequence, the court granted the defendant's motion for a bill of particulars but denied his motion in limine. In light of the court's ruling, the state, on that same day, filed a second amended information charging the defendant

with (1) transporting "a narcotic substance, to wit: cocaine and heroin" with intent to sell by a person who is not drug dependent, (2) of doing so within 1500 feet of a public housing project, and (3) possession of "a narcotic substance, to wit: cocaine . . . ." After the state filed the second amended information, the defendant moved to dismiss the charges as they related to heroin on double jeopardy grounds. In support of his motion to dismiss, the defendant presented the testimony of Jane Ridley, a chemist, who testified that, although heroin and opium are distinct drugs, heroin is a chemical compound derived from the opiate plant. She further testified that, although heroin can be manufactured synthetically, she would have no way of knowing whether the heroin in the present case was synthetic without examining it.

At the conclusion of the state's case, the court heard argument on the defendant's motion to dismiss. At that time, the state maintained that the charges in the second amended information did not violate the defendant's right against double jeopardy because, although heroin is derived from opium, they are different drugs. Thereafter, the court denied the defendant's motion to dismiss, concluding that, as the state had maintained, opium and heroin are different drugs.[13] The court subsequently instructed the jury that, although the second amended information charged the defendant with transporting both cocaine and heroin with the intent to sell, the state was not required to prove that the defendant had transported both cocaine and heroin with the requisite intent, but, rather, the jury could find the defendant guilty on that charge if it found that he transported

---

[13] The court later issued a memorandum of decision in which it explained in relevant part: "The court denies the motion to dismiss on double jeopardy grounds. The court finds either that heroin is a separate drug from opium or that even if it can be considered as the same drug in one of its forms, it comes in [two] forms, one of which is by synthetic manufacture, and no one is, in this case at least, able to tell them apart."

"either" cocaine or heroin with that intent. The jury subsequently found the defendant guilty of all charges.

On appeal, the state does not dispute that the second trial violated principles of double jeopardy insofar as the jury was permitted to consider the defendant's alleged transportation of heroin with intent to sell.[14] Indeed, there can be no question of such a violation. "We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. . . . The [c]lause operates as a bar

---

[14] We note that the state contends that the defendant waived his double jeopardy claim by waiting until after evidence had begun at his retrial to file his motion to dismiss the charges as they related to the transportation of heroin on double jeopardy grounds and by failing to seek an interlocutory appeal from the trial court's subsequent denial of that motion at the close of the state's case. See, e.g., *State* v. *Price*, 208 Conn. 387, 390, 544 A.2d 184 (1988) (defendant waives double jeopardy claim by not raising it in timely manner). The state further maintains that the double jeopardy violation did not taint the defendant's conviction for transporting cocaine with intent to sell and transporting cocaine with intent to sell within 1500 feet of a public housing project. In support of this latter assertion, the state contends that, in view of the fact that the second amended information charged the defendant with transporting both cocaine and heroin in the same count and the fact that the jury was instructed that it could find the defendant guilty if it determined that he transported "either" cocaine or heroin, it is far more likely that the defendant's conviction was predicated on his transportation of cocaine rather than heroin because the evidence linked the defendant more closely to the cocaine. We are not persuaded by the state's claims. Contrary to the state's assertion, the defendant raised his double jeopardy claim in a timely manner; indeed, he did so at the first possible opportunity after learning that the state intended to retry him for the heroin offense. We also reject the state's contention that the double jeopardy violation was harmless because the state cannot establish beyond a reasonable doubt that the evidence concerning the defendant's transportation of heroin with intent to sell did not affect the jury's deliberations.

against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent." (Internal quotation marks omitted.) *State* v. *Bruno*, 293 Conn. 127, 140, 975 A.2d 1253 (2009). The present case involves the aspect of the double jeopardy clause that protects against a second prosecution for the same offense after acquittal. "The traditional approach to analyzing whether two offenses constitute the same offense [for double jeopardy purposes is] set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [When] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact [that] the other does not." (Internal quotation marks omitted.) *State* v. *Alvarez*, 257 Conn. 782, 789, 778 A.2d 938 (2001).

In the present case, the *Blockburger* test is readily satisfied because the defendant was charged twice with a violation of the same statutory provisions on the basis of the same underlying conduct. Indeed, the only real difference between the information filed before the defendant's first trial and the second amended information is the label placed on the narcotic substance at issue: for purposes of the first trial, the state identified the substance as "opium"; for purposes of the second trial, the state labeled that same substance as "heroin."

The only remaining issue, therefore, is whether, in light of the double jeopardy violation, the state may retry the defendant for transporting cocaine with intent to sell. As a general matter, when the state charges a defendant in separate counts with a jeopardy barred offense and an offense that is not so barred, and the jury finds the defendant guilty on both counts, the defendant is entitled to a new trial on the nonbarred

offense unless the state is able to prove beyond a reasonable doubt that the joinder of the two charges did not prejudice the defendant. See *Pacelli* v. *United States*, 588 F.2d 360, 364 (2d Cir. 1978) ("the possibility of significant prejudice resulting from the joinder of a jeopardy-barred charge with a permissible one is a problem of constitutional dimensions"), cert. denied, 441 U.S. 908, 99 S. Ct. 2001, 60 L. Ed. 2d 378 (1979); *United States ex rel. Hetenyi* v. *Wilkins*, 348 F.2d 844, 867 (2d Cir. 1965) ("[t]he concept of 'due process of law' embodied in the [f]ourteenth [a]mendment . . . not only imposes substantive limitations on the power of the states to reprosecute an individual for the same crime; it also entitles an accused, as a condition of depriving him of his liberty, to a trial [when] there is no reasonable possibility that violation of his constitutional rights has worked to his prejudice"), cert. denied sub nom. *Mancusi* v. *Hetenyi*, 383 U.S. 913, 86 S. Ct. 896, 15 L. Ed. 2d 667 (1966). When a jeopardy barred charge has been joined with a permissible charge, however, "[t]he question is not whether the accused was actually prejudiced [by the joinder], but whether there is [a] *reasonable possibility* that he was prejudiced." (Emphasis in original.) Id., 864; see also *Graham* v. *Smith*, 602 F.2d 1078, 1082–83 (2d Cir.) (conviction on permissible charge vacated when government was unable to prove beyond reasonable doubt that defendant was not prejudiced by joinder of jeopardy barred and permissible charge), cert. denied, 444 U.S. 995, 100 S. Ct. 531, 62 L. Ed. 2d 426 (1979).

In the present case, the double jeopardy violation does not involve the joinder of a jeopardy barred and permissible charge in separate counts. Rather, the state charged the defendant in a single count with a violation of § 21a-278 (b) predicated on the defendant's unlawful transportation of "a narcotic substance, to wit: cocaine and heroin," and the jury was instructed that it could

find the defendant guilty if it determined that he had unlawfully transported "either" cocaine or heroin with the intent to sell. Thus, the jury could have found the defendant guilty on the basis of his unlawful transportation of either drug. Because the jury returned a general verdict, however, there is no way of knowing whether it found the defendant guilty on the basis of his transportation of cocaine, heroin or both. It is precisely for this reason that we must reverse the defendant's conviction on this count. See *State* v. *Montanez*, 277 Conn. 735, 764 n.26, 894 A.2d 928 (2006) (when it cannot be determined from record on which alternative theory of liability jury reached guilty verdict, defendant is entitled to reversal of conviction as to both theories of liability); see also *State* v. *Freeney*, 228 Conn. 582, 589, 637 A.2d 1088 (1994) (conviction obtained in violation of double jeopardy clause must be vacated).

It is also for this reason, however, that the state cannot be permitted to retry the defendant for unlawfully transporting cocaine with intent to sell unless the state can demonstrate beyond a reasonable doubt that he was *not* acquitted of that charge at his first trial. Cf. *United States* v. *McCourty*, 562 F.3d 458, 473–75 (2d Cir.) (because jury was directed to make specific findings on verdict form as to separate bases of liability under each count, retrial on bases on which jury was unable to reach verdict posed no double jeopardy problem), cert. denied, 558 U.S. 1100, 130 S. Ct. 1012, 175 L. Ed. 2d 634 (2009); *United States* v. *Rivera*, 77 F.3d 1348, 1351–52 (11th Cir.) (when information charged defendant with possessing firearm on two separate dates and jury found defendant not guilty as to possession on one date but deadlocked as to possession on other date, retrial for possession on other date was not barred), cert. denied, 517 U.S. 1250, 116 S. Ct. 2511, 135 L. Ed. 2d 200 (1996). Of course, if the second jury *did* find the defendant not guilty of transporting cocaine, the defendant's double jeopardy rights would be vio-

lated if he were to be prosecuted again for that conduct. We are persuaded, however, that there is no reasonable possibility that the second jury found the defendant not guilty of transporting cocaine with the intent to sell at the defendant's retrial.

We reach this conclusion for several reasons. First, cocaine constituted the majority of drugs that were found in the defendant's vehicle. As we previously indicated, police seized approximately 189 packages of cocaine but only fifteen folds of heroin. Second, the jury found the defendant guilty of possession of cocaine, which the defendant was charged with in a separate count. It is clear, therefore, that the jury found that the defendant was in possession of cocaine when he was stopped by the police. Finally, and most significantly, the fifteen folds of heroin that were seized from the vehicle were found inside a pouch that also contained approximately 100 "slabs" of cocaine. Under the circumstances, therefore, it is virtually inconceivable that the jury found the defendant guilty of transporting narcotics with intent to sell on the basis of the defendant's possession of heroin but also found that he had not transported with intent to sell the much larger quantity of cocaine, which was found in the very same container as the heroin. Accordingly, if the state elects to retry the defendant on the charge of transporting cocaine with intent to sell by a person who is not drug dependent, a retrial on that charge would not violate the defendant's rights under the double jeopardy clause.

IV

Finally, the defendant claims that the evidence was insufficient to support his conviction under General Statutes § 53a-172 (a) (1)[15] for failure to appear in the

---

[15] General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ."

first degree because the state did not introduce into evidence a copy of the defendant's bail bond, and the state adduced no other evidence that the defendant's appearance in court was required under the terms of that bond. We reject this claim.

The following facts and procedural history are relevant to our disposition of this claim. The defendant was charged with failure to appear in the first degree after failing to appear at a January 6, 2003 probation violation hearing in another case.[16] As we previously indicated, the jury at the defendant's first trial in the present case found the defendant guilty of the failure to appear charge. At that trial, the state adduced the testimony of Edward Murnane, the attorney who represented the defendant at the January 6, 2003 probation violation hearing. Murnane testified that, although the defendant had appeared for the morning session of the hearing, he had failed to return to court for the afternoon session as he had been ordered to do by the trial court, *Damiani, J.* Although the hearing continued in the defendant's absence, the court, at the conclusion of the hearing, when the defendant still had not appeared, ordered that the defendant be rearrested and that his bond be forfeited.

The state also called Edward McKiernan, an assistant clerk for the Superior Court in the judicial district of Fairfield. He testified that the court called the defendant's bond during the afternoon session because the defendant had failed to appear as ordered. McKiernan further testified that, as a result of the defendant's failure to appear, the court called the bond not only in the probation violation case but in the present case, as well, which was pending but had not yet proceeded to trial. The state also introduced into evidence a redacted por-

---

[16] The defendant's arrest in the present case is what prompted the probation violation charge and hearing in that other case.

tion of the docket sheet in the case involving the probation violation charge, which provides in relevant part: "1/6/03 - No appearance by defendant - PM session. Bond forfeited. Rearrest ordered. New bond set at [$]150,000."

In its final jury charge, the trial court instructed the jury in relevant part: "[T]he defendant is charged with failure to appear in the first degree, in violation of [§] 53a-172a . . . which provides [that] [a] person is guilty of failure to appear in the first degree . . . when, while charged with a commission of a felony and while out on bail . . . he wilfully fails to appear when legally called according to the terms of the bail bond or promise to appear. For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: One, that the defendant was released on bail upon the condition that he appear personally in connection with a criminal proceeding at a future given date; two, that on January 6, 2003, the defendant was required to appear before the court in connection with the charge of violation of the state dependency producing drug law for the afternoon . . . three, that the defendant wilfully failed to appear as required in this connection, and he wilfully failed to appear during the afternoon session of said court." The jury subsequently returned a verdict of guilty as to this charge.

On appeal, the defendant's sole claim is that the state's proof that he was free on bond, that his bond was forfeited and that he was rearrested after he failed to return to court on January 6, 2003, does not support an inference that his appearance in court on January 6, 2003, was required by the terms of the bond. We agree with the state that the jury reasonably could have inferred that the defendant's appearance in court on January 6, 2003, was a term or condition of his bond in view of the fact that the defendant's bond was for-

feited and that he was ordered rearrested after his failure to appear on that day. See *State* v. *Jones*, 37 Conn. App. 437, 449–50, 656 A.2d 696 (evidence sufficient to support conviction of defendant for failure to appear because jury reasonably could have inferred from defendant's rearrest that such appearance was required), cert. denied, 233 Conn. 915, 659 A.2d 186 (1995). We also agree with the state that it is a matter of common knowledge that bonds and bail are posted as a condition of release for the purpose of ensuring the presence of an accused for all court proceedings pertaining to the charged offense. See, e.g., *State* v. *Ayala*, 222 Conn. 331, 349, 610 A.2d 1162 (1992) ("the fundamental purpose of bail is to ensure the presence of an accused throughout all proceedings" [internal quotation marks omitted]); *Liistro* v. *Robinson*, 170 Conn. 116, 135, 365 A.2d 109 (1976) ("[t]he primary purpose of bail is to ensure the future presence of the person at the time when his presence is required"). Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction of failure to appear in the first degree.

The judgment with respect to the defendant's conviction of transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project, transporting cocaine and heroin with intent to sell by a person who is not drug dependent, and possession of cocaine is reversed and the case is remanded with direction to render judgment of not guilty of the offense of transporting cocaine and heroin with intent to sell within 1500 feet of a public housing project and for a new trial on the offenses of transporting cocaine with intent to sell by a person who is not drug dependent and possession of cocaine; the judgment with respect to the defendant's conviction of failure to appear in the first degree is affirmed.

In this opinion the other justices concurred.